**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INOVA HEALTH CARE SERVICES, FOR INOVA FAIRFAX HOSPITAL AND ITS DEPARTMENT, LIFE WITH CANCER,** et al., | |
| **Plaintiffs,** | |
| v. | Civil No. 20-784 (JDB) |
| **OMNI SHOREHAM CORPORATION,** et al., | |
| **Defendants.** | |

**MEMORANDUM OPINION**

In December 2018, plaintiffs—three non-profit organizations—contracted with defendant Omni Shoreham Corp. to hold an annual fundraising event in designated ballrooms at the Omni Shoreham Hotel ("the Hotel") in Washington, DC in September 2019.  Shortly before the event was to take place, Omni Shoreham informed plaintiffs that their event was being relocated to other rooms at the Hotel, because it had recently rented the designated ballrooms to defendant John Doe Organization.  Plaintiffs were unsatisfied with the change of plans and, after holding the event at a different venue altogether, brought suit against Omni Shoreham and John Doe Organization, alleging breach of contract, tortious interference with contractual relations, and two other claims.  Omni Shoreham has now moved to dismiss two plaintiffs and three claims from the action.  For the reasons stated below, the Court will deny the motion.

**Background**

**A. Factual Background**[1]

---

[1] The relevant facts are drawn from plaintiffs' complaint and are assumed to be true for purposes of the motion to dismiss.

Plaintiffs are three non-profit organizations: Life With Cancer[2]; Smith Center for Healing and the Arts; and Special Love, Inc.  See Compl. [ECF No. 1-3] ¶¶ 1–3.  Plaintiffs each specialize in providing education and support to cancer patients and their families.  Id.  Much of the funding for plaintiffs' programs comes from the annual Joan Hisaoka "Make a Difference" Gala, which raises about $2,000,000 per year, making it the "single largest annual fundraising event for Life With Cancer and the Smith Center," and "a significant fundraising event for Special Love."  See id. ¶¶ 8–9, 18.  The Gala is "a black-tie event that includes a formal dinner, program, dancing and silent and live auctions."  Id. ¶ 8.  Beginning in 2013 and continuing through 2018, plaintiffs held the Gala at the Hotel, in the Regency and Ambassador Ballrooms.  Id. ¶¶ 8, 12.

Plaintiffs intended to hold the Gala at the Hotel again, in the same ballrooms, in 2019.  Id. ¶¶ 9, 12.  Consistent with past practice, Life With Cancer entered into a contract (the "Gala Contract") with Omni Shoreham about nine months in advance of the planned 2019 Gala date of September 21, 2019.  Id. ¶¶ 9, 17.  The Gala Contract, signed on December 14, 2018, specified in detail the times and locations at the Hotel that were reserved and to be made available for the 2019 Gala.  Id. ¶ 9.  In particular, the Contract stated that the Gala's various events were to be held in the Hotel's Regency and Ambassador Ballrooms.  Id. ¶ 12.  The Gala Contract further provided that it would "be binding upon the Hotel and [Life With Cancer]," and that "[a]ny changes, additions, stipulations, or decisions by either the Hotel or [Life With Cancer] . . . will not be considered agreed to or binding unless such modifications have been initialed or otherwise approved in writing by both parties."  Id. ¶¶ 13–14.

Plaintiffs' plans for the 2019 Gala were thrown into disarray when, in July 2019, Omni Shoreham informed them via letter that the Gala had been relocated from the Regency and

---

[2] Life With Cancer's full name is Inova Health Care Services, for Inova Fairfax Hospital and its Department, Life With Cancer.

Ambassador Ballrooms to the Hotel's Blue Room and adjoining areas. Id. ¶ 16. Plaintiffs rejected this relocation out of hand, responding to Omni Shoreham's letter with a letter of their own, advising Omni Shoreham that "any attempt to relocate the 2019 Gala to the other identified locations in the Hotel would be considered a clear and absolute breach of the Gala Contract by the Hotel." Id. ¶ 19. In plaintiffs' view, the Blue Room was "grossly inadequate to meet the needs of the Gala" and a "clear and complete downgrade from what Gala guests had become accustomed to," because it was "marred by obstructive views," had "low ceilings," could not "accommodate the required stage set up," and was "too small to allow volunteers to navigate the room effectively for the live auction and related programs." Id. ¶ 24. The Blue Room's adjoining areas had similar problems. See id. ¶ 25. Plaintiffs demanded that Omni Shoreham rescind its letter and provide assurances that the Gala would be held, as planned, in the Regency and Ambassador Ballrooms. Id. ¶ 20. But Omni Shoreham was unmoved, informing plaintiffs that it "st[ood] by" its decision to relocate the Gala to the Blue Room and adjoining areas. Id. ¶ 21.

According to plaintiffs' complaint, Omni Shoreham's decision to "intentionally repudiat[e] its contractual obligations" and relocate the Gala was based on Omni Shoreham's desire to host John Doe Organization, rather than plaintiffs, in the Regency and Ambassador Ballrooms on the evening of September 21, 2019. Id. ¶¶ 17, 28. As the complaint puts it, John Doe Organization had made Omni Shoreham "a more lucrative offer for the Gala's space," and Omni Shoreham had accepted that offer, despite its contractual obligation to Life With Cancer, because it wanted to "line its pockets with additional profits, to the detriment of the Gala and its beneficiaries." Id. ¶ 28.

Ultimately, plaintiffs refused to accept Omni Shoreham's proposal to relocate the Gala to the Blue Room and, because the Blue Room could not suit the Gala's needs, were "forced to

hurriedly obtain an alternative venue."  Id. ¶ 30.  Although plaintiffs secured a new venue—the

Mandarin Oriental Hotel—they ended up paying much higher expenses for event-related items,

such as food and beverages, furniture rental, and bartenders, than they would have at the Omni

Shoreham Hotel.  Id. ¶ 33.  They also incurred attorney's fees associated with the relocation

dispute.  Id.  And, most importantly, their fundraising efforts were damaged, because they were

"forced to devote valuable time and effort primarily toward obtaining an alternative venue . . . and

away from efforts necessary to recruit additional funding scholarships" and were additionally "left

with insufficient time to obtain all of the items necessary for the silent auction."  Id. ¶ 34.  As a

result, "revenue generated by the 2019 Gala was significantly less" than in 2018, and "over

$284,700 less" than expectations based on historical performance.  Id.

### B.  Procedural History

Plaintiffs originally filed suit against Omni Shoreham and John Doe Organization in D.C.

Superior Court on March 2, 2020.  See id. at 16.  The complaint alleges four counts: breach of

contract and breach of the covenant of good faith and fair dealing against Omni Shoreham; tortious

interference with contractual relations against John Doe Organization; and civil conspiracy against

both Omni Shoreham and John Doe Organization.  Id. ¶¶ 35–53.  Omni Shoreham removed the

suit to this Court on March 20, 2020.  See Notice of Removal [ECF No. 1] at 1.  That same day,

Omni Shoreham moved to dismiss plaintiffs Smith Center and Special Love under Fed. R. Civ. P.

12(b)(1) and Counts II, III, and IV of plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6).  See

Omni Shoreham Corp.'s Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") [ECF No. 3-1] at

1.  The motion is now fully briefed and ripe for decision.

## Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges a court's power to hear a plaintiff's legal claims.  To withstand a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir 2015).  When reviewing such a motion, "the district court may consider materials outside the pleadings," but nonetheless "must still accept all of the factual allegations in [the] complaint as true."  Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (internal quotation marks and citation omitted).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint's allegations.  To withstand a Rule 12(b)(6) motion, the complaint (and each challenged count) "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true all of the plaintiff's allegations of fact, and must also 'grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Edwards v. United States, 2020 WL 2800605, at *5 (D.D.C. May 29, 2020) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  "However, the court need not accept inferences . . . [that] are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## Analysis

In its motion to dismiss, Omni Shoreham makes several arguments.  First, it contends that only Life With Cancer has standing to sue, and that Smith Center and Special Love should be dismissed for lack of standing.  Second, Omni Shoreham argues that Count II, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, should be dismissed as duplicative

of plaintiffs' breach of contract claim.  Third, Omni Shoreham argues that Count III, plaintiffs'

tortious interference with contractual relations claim, should be dismissed as to Omni Shoreham,

because it can be stated (if at all) only against John Doe Organization.  Finally, Omni Shoreham

maintains that Count IV, the civil conspiracy claim, must be dismissed because of the economic

loss rule and because plaintiffs have not argued that Omni Shoreham itself committed an

underlying tort.  The Court will address each argument in turn.

## I.      Standing of Smith Center and Special Love

Omni Shoreham first argues that Smith Center and Special Love lack both prudential

standing and Article III standing to bring claims against Omni Shoreham.  See Mot. to Dismiss at

7–11.

Courts have "imposed a number of prudential standing requirements; that is, requirements

that are designed 'to limit the role of the courts in resolving public disputes' as a matter of policy."

FiberLight, LLC v. Nat'l R.R. Passenger Corp., 81 F. Supp. 3d 93, 105 (D.D.C. 2015) (quoting

Warth v. Seldin, 422 U.S. 490, 500 (1975)).  Omni Shoreham invokes one such requirement

against Smith Center and Special Love: the requirement "that a party cannot sue to enforce or

challenge the terms of a contract to which it is neither a party nor a third-party beneficiary."[3]  Id.;

see Mot. to Dismiss at 9–11.  Plaintiffs concede that neither Smith Center nor Special Love were

parties to the Gala Contract, which was signed only by Life With Cancer and Omni Shoreham, but

contend that they were third-party beneficiaries and thus have prudential standing.  See Pls.' Opp'n

to Def. Omni Shoreham Corp.'s Mot. to Dismiss ("Opp'n") [ECF No. 8] at 6–12.

---

[3] Omni Shoreham also raises the shareholder standing rule, which provides that a corporation may not bring suit on behalf of a parent or subsidiary that is its own distinct legal entity.  See Mot. to Dismiss at 7–9; Sec. Indus. & Fin. Mkts. Assoc. v. U.S. Commodity Futures Trading Comm'n, 67 F. Supp. 3d 373, 406–07 (D.D.C. 2014).  But plaintiffs nowhere allege that Smith Center or Special Love are bringing claims on behalf of Life With Cancer, instead alleging that they are third-party beneficiaries entitled to bring claims themselves.  As a result, the shareholder standing rule is irrelevant here.

Under D.C. law, for an entity to have third-party beneficiary status, "the contracting parties [must have] had an express or implied intention to benefit directly the party claiming such status."[4] Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1064 (D.C. 2008); see also Fields v. Tillerson, 726 A.2d 670, 672 (D.C. 1999) ("A third party to a contract may sue to enforce its provisions if the contracting parties intend the third party to benefit directly thereunder." (internal quotation marks omitted)).  "[A]n indirect interest in the performance of the [contractual] undertakings is insufficient."  Fort Lincoln, 944 A.2d at 1064 (internal quotation marks omitted). "To be intended, a beneficiary need not be named in the contract, as long as he or she is ascertainable from the contract and the circumstances of the contract."  Hossain v. JMU Props., LLC, 147 A.3d 816, 820 (D.C. 2016) (quotation omitted); see Western Union Tel. Co. v. Massman Constr. Co., 402 A.2d 1275, 1277 (D.C. 1979) ("[T]he absence of the third party's name from the contract is not fatal to his claim, especially when the surrounding circumstances tend to identify the third-party beneficiary.").

Here, plaintiffs argue that Smith Center and Special Love were third-party beneficiaries because an intent to benefit them can be "garnered from the facts and circumstances surrounding [the Gala Contract's] formation."  Willoughby v. Potomac Elec. Power. Co., 1995 WL 761308, at *2 (D.D.C. Dec. 14, 1995) (quotation omitted).  Plaintiffs point to two sets of allegations in the complaint as support.  First, plaintiffs note that all three nonprofits had entered into a fundraising agreement with RGH Management Services, LLC, under which RGH would "plan, organize[,] and implement the 2019 Gala," including by entering into contracts on behalf of Life With Cancer as the primary beneficiary of the event.  See Opp'n at 9–10; Compl. ¶¶ 9–11.  Second, plaintiffs

---

[4] Plaintiffs and Omni Shoreham agree that this case is governed by D.C. law.  See Mot. to Dismiss at 14–15; Opp'n at 13.

emphasize the allegations in the complaint that the Hotel has hosted the Gala since 2013 and that the Gala has historically benefited all three plaintiffs.  See Opp'n at 9; Compl. ¶¶ 8, 18.

The first set of allegations does not help plaintiffs.  While these allegations certainly demonstrate that Smith Center and Special Love had an interest in the 2019 Gala, they do nothing to demonstrate that Omni Shoreham had an intent, either express or implied, to benefit Smith Center or Special Love when it entered into the Gala Contract.  The complaint does not suggest that Omni Shoreham knew about the fundraising agreement or that the agreement played a role in the formation of the Gala Contract.  The first set of allegations, then, at most shows that Smith Center and Special Love were "incidental beneficiaries" to the Gala Contract: entities who "will be benefited by performance of a promise but who [are] neither . . . promisee[s] nor . . . intended beneficiar[ies]."  Fort Lincoln, 944 A.2d at 1064–65 (quoting Restatement (Second) of Contracts § 315 (1981)).

While it is a somewhat close call, the second set of allegations is more helpful to plaintiffs.  The fact that the Gala had been held at the Hotel since 2013, with all three plaintiffs participating, "arguably support[s] an inference," Monument Realty LLC v. Wash. Met. Area Transit Auth., 535 F. Supp. 2d 60, 70 (D.D.C. 2008), that Omni Shoreham not only knew of Smith Center and Special Love's existence, but indeed intended to benefit them once again by forming the Gala Contract with Life With Cancer.  Put another way, the previous participation of Smith Center and Special Love at this event—which it can be inferred that Omni Shoreham knew about—arguably put Omni Shoreham on "sufficient notice" that the Gala Contract "was for the benefit of" Smith Center and Special Love as third-party beneficiaries.  Piedmont Resol., LLC v. Johnston, Rivlin & Foley, 999 F. Supp. 34, 49 (D.D.C. 1998).

8

To be sure, at a later stage in this litigation, the Court or a jury will consider the relevant evidence, including extrinsic evidence, to ascertain whether Smith Center and Special Love are in fact third-party beneficiaries.[5]  See FiberLight, LLC, 81 F. Supp. 3d at 109.  But the underlying question of their third-party beneficiary status "is a mixed question of law and fact."  Silberberg v. Becker, 191 A.3d 324, 336 (D.C. 2018) (quotation omitted).  For the time being, in deciding Omni Shoreham's motion to dismiss (even under Rule 12(b)(1)), the Court must "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged."  Chien v. United States, 2019 WL 4602119, at *3 (D.D.C. Sept. 23, 2019).  The intent of the contracting parties to benefit Smith Center and Special Love is a permissible inference from the facts alleged in plaintiffs' complaint.  Hence, the Court is "unable to say as a matter of law that [plaintiffs] will be unable to prove to a jury that they were intended third-party beneficiaries of the [Gala Contract]."  Silberberg, 191 A.3d at 336; see id. (reserving until trial "factual issues as to . . . the circumstances of negotiation and execution of the [contract] and the parties' intent").  The Court concludes that plaintiffs have satisfactorily alleged that Smith Center and Special Love are third-party beneficiaries and will thus not dismiss them for lack of prudential standing.

As for Article III standing, Omni Shoreham only briefly argues that Smith Center and Special Love lack Article III standing, and its argument that they did not suffer an injury-in-fact is premised largely on its position that neither plaintiff is a third-party beneficiary.  See Mot. to Dismiss at 11.  Because the Court concludes that, for now, plaintiffs have met their burden to show that Smith Center and Special Love are third-party beneficiaries, it likewise concludes that they

---

[5] Extrinsic evidence can be considered where "the terms of the contract do not expressly resolve the parties' intent." FiberLight, LLC, 81 F. Supp. 3d at 109.  Such is the case here.  Nothing in the contract precludes the existence of third-party beneficiaries, as might, for instance, a clause stating that nothing contained in the contract "is intended to confer on any person other than the parties . . . any rights, remedies, obligations, or liabilities." Id. (quotation omitted).

have met the requirements of Article III.   Smith Center and Special Love, as third-party

beneficiaries, had a legally protected interest in having Omni Shoreham perform its duties under

the Gala Contract.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  By failing to do so,

Omni Shoreham "inva[ded]" that interest, thereby satisfying Article III's injury-in-fact

requirement.  Id.  The injury was caused by Omni Shoreham and is redressable by this Court

through an award of damages.  See id. at 560–61.  Therefore, the Court will not dismiss Smith

Center or Special Love for lack of Article III standing.

## II.        Breach of Implied Covenant of Good Faith and Fair Dealing

Omni Shoreham next argues that plaintiffs' claim of breach of the implied covenant of

good faith and fair dealing must be dismissed because (1) it is duplicative of their breach of

contract claim, and (2) does not sufficiently allege bad faith.  See Mot. to Dismiss at 14–15.

The first argument relies solely on a proposition of law first set out in Wash Metro. Area

Transit Auth. v. Quik Serve Foods, Inc., 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006)

(Lamberth, J.), aff'd on other grounds, No. 06-7092 (D.C. Cir. 2006): that "breach of the implied

covenant is not an independent cause of action when the allegations are identical to other claims

for relief under established cause[s] of action."  Quik Serve has proven to be controversial.  Some

judges in this District have cited Quik Serve approvingly and dismissed claims for breach of the

implied covenant where the allegations therein were identical to other claims in the complaint.[6]

Other judges have explicitly disagreed with Quik Serve's reasoning and declined to dismiss

---

[6] See, e.g., Doe v. George Wash. Univ., 366 F. Supp. 3d 1, 8 (D.D.C. 2018) (Collyer, J.); Burks Cos., Inc. v.
Howard Univ., 2018 WL 4193640, at *10 (D.D.C. May 9, 2018) (Friedrich, J.); Xereas v. Heiss, 933 F. Supp. 2d 1, 8
(D.D.C. 2013) (Roberts, J.); see also, e.g., Whole Foods Mkt. Grp., Inc. v. Wical Ltd. P'ship, 288 F. Supp. 3d 176,
187 (D.D.C. 2018) (Lamberth, J.); North. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle,
Sandridge, & Rice, PLLC, 887 F. Supp. 2d 78, 84 (D.D.C. 2012) (Lamberth, J.); Capitol Justice, LLC v. Wachovia
Corp., 2008 WL 11388566, at *7 (D.D.C. June 11, 2008) (Lamberth, J.).

identical claims.[7]  Because past District precedent on the issue is wholly in conflict, the Court has

analyzed Quik Serve afresh and come to the conclusion that the proposition of law it sets forth is

incorrect.

Binding D.C. law provides that "all contracts contain an implied duty of good faith and fair

dealing."  Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 321 (D.C. 2008) (quotation

omitted).  The implied covenant (or "duty") provides an independent cause of action where a "party

to a contract evades the spirit of the contract, willfully renders imperfect performance, or interferes

with performance by the other party."  Allworth v. Howard Univ., 890 A.2d 194, 201 (D.C. 2006)

(quotation omitted).  Quik Serve acknowledged this clear D.C. law, but nevertheless concluded

that the implied covenant does not provide an independent cause of action "when the allegations

are identical to other claims for relief under established cause[s] of action."  Quik Serve, 2006 WL

1147933, at *5.  Quik Serve provided only one citation for that broad proposition: Jacobsen v.

Oliver, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 2002).  Quik Serve's reliance on Jacobsen is

problematic for two reasons.

First, Jacobsen arose in the legal malpractice context.  Plaintiff there had alleged both a tort

claim of professional malpractice and a claim of breach of the implied covenant—but no breach

of contract claim.  In that specific context, with no analysis, Jacobsen held that "there is no

independent cause of action for an implied covenant of good faith and fair dealing with respect to

an attorney's representation of a client."  Id.  Jacobsen said nothing about "whether the same result

is warranted when a former client asserts a breach of contract claim against an attorney."  Lans,

786 F. Supp. 2d at 319.  And in light of the general rule under D.C. law that all contracts contain

---

[7] See, e.g., FiberLight, LLC v. Wash. Metro. Area Transit Auth., 2017 WL 2544131, at *10 n.13 (D.D.C. June 12, 2017) (Huvelle, J.); Jacobson v. Hofgard, 168 F. Supp. 3d 187, 208 (D.D.C. 2016) (Mehta, J.); Lans v. Adduci Mastriani & Schaumberg L.L.P., 786 F. Supp. 2d 240, 319 (D.D.C. 2011) (Walton, J.).

an implied covenant, and that the covenant <u>does</u> provide an independent cause of action, the extension of the <u>Jacobsen</u> holding to the contract context is questionable.

Second, and relatedly, <u>Jacobsen</u> itself is on very shaky legal ground, because it relied upon only a single Third Circuit case, <u>Northview Motors v. Chrysler Motors Corp.</u>, 227 F.3d 78 (3d Cir. 2000), quoting it for the proposition that "a party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action,'" <u>id.</u> at 92–93.  But this citation was inapt.  <u>Jacobsen</u> was a case involving D.C. law, <u>see</u> <u>Jacobsen</u>, 201 F. Supp. 2d at 99, but the quoted <u>Northview</u> statement is specific to Pennsylvania, because unlike under D.C. law, in Pennsylvania "every contract does <u>not</u> imply a duty of good faith."  <u>Parkway Garage, Inc. v. City of Philadelphia</u>, 5 F.3d 685, 701 (3d Cir. 1993) (emphasis added).  Hence, <u>Quik Serve</u> really has no underlying D.C. law supporting it. It cites only <u>Jacobsen</u>, which in turn cites only a Third Circuit case interpreting a body of law directly in conflict with D.C. law.

Moreover, <u>Quik Serve</u> conflicts with another aspect of D.C. law—that plaintiffs are not required to "elect between . . . alternative claims before the case is submitted to the jury."  <u>Mod. Mgmt. Co. v. Wilson</u>, 997 A.2d 37, 44 n.10 (D.C. 2010).  A recent case, applying <u>Quik Serve</u>, suggested that this rule means only that plaintiffs cannot be required to choose between different remedies, such as between a declaratory judgment or damages.  <u>Whole Foods Mkt. Grp.</u>, 288 F. Supp. 3d at 187.  Not so.  Certainly, plaintiffs "cannot win relief on both counts" where the remedies sought are duplicative.  <u>Modern Mgmt. Co.</u>, 997 A.2d at 44 n.10.  But the D.C. Court of Appeals has made clear that even where the "<u>remedies</u> plaintiff [seeks are] duplicative," the plaintiff still cannot be made to choose between alternative claims.  <u>Giordano v. Interdonato</u>, 586 A.2d 714, 717 (D.C. 1991); <u>see also</u> <u>id.</u> at 719 (concluding that trial court had erred in requiring

plaintiff to choose between breach of contract and breach of fiduciary duty claims with duplicative remedies sought).  Thus, here, even though plaintiffs seek duplicative remedies for their breach of contract and breach of the implied covenant claims, see Compl. ¶¶ 40, 44, D.C. law prohibits this Court from forcing them to choose between the claims at this stage.  For all these reasons, the Court declines to dismiss plaintiffs' implied breach of the implied covenant claim based on Quik Serve.[8]

The Court also rejects Omni Shoreham's argument that plaintiffs have failed to sufficiently allege bad faith, see Mot. to Dismiss at 14–15.  In the context of a breach of the implied covenant claim, a party acts in bad faith when it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party."  Allworth, 890 A.2d at 201.  In other words, bad faith involves "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."  Himmelstein v. Comcast, 908 F. Supp. 2d 49, 54 (D.D.C. 2012) (quotation omitted).  Here, plaintiffs allege that Omni Shoreham unilaterally relocated the 2019 Gala from the Regency and Ambassador Ballrooms to the (in their view, significantly inferior) Blue Room and adjoining areas "to accommodate the John Doe Organization" and to "accept a more lucrative offer for the Gala's space and to line its pockets with additional profits."  Compl. ¶¶ 17, 28.  Taking such allegations as true, they are not the stuff of "mistake" or "negligence or lack of diligence."  Allworth, 890 A.2d at 202.  Instead, they adequately assert that Omni Shoreham, with an "interested or corrupt motive," Himmelstein, 908

---

[8] Because the Court has determined that the claim need not be dismissed even if its allegations are identical to the breach of contract claim, it will not address plaintiffs' argument that the allegations supporting the two claims can be distinguished, see Opp'n at 14.

F. Supp. 2d at 54, evaded the spirit of the Gala Contract and willfully rendered imperfect performance.

Accordingly, the Court will deny Omni Shoreham's motion to dismiss as to Count II.

### III.    Tortious Interference With Contractual Relations

Omni Shoreham's opening brief argued that "to the extent Plaintiffs' Complaint could somehow be read as asserting [a tortious interference with contractual relations] claim against Omni, it should be dismissed," because "[a] party to [a] relationship cannot be liable for tortiously interfering with that relationship."  Mot to Dismiss at 16–17.  However, that count (Count III) of the complaint clearly states that it is asserted only against John Doe Organization.  See Compl. at 14.  Plaintiffs' opposition brief reaffirms that the count is not asserted against Omni Shoreham. See Opp'n at 18 ("Count III of Plaintiffs' Complaint is not asserted against Defendant Omni—a party to the Gala Contract—and instead is asserted only against Defendant John Doe Organization.").  Given this concession, Omni Shoreham abandoned the argument in its reply brief.  See Omni Shoreham Corp.'s Reply Mem. in Supp. of Mot. to Dismiss ("Reply Br.") [ECF No. 10] at 14.  As a result, the Court will disregard the argument.

### IV.    Civil Conspiracy

Finally, Omni Shoreham contends that Count IV of the complaint, for civil conspiracy, should be dismissed on three grounds: first, because a civil conspiracy claim cannot be maintained against a party absent an underlying tort by that party; second, because D.C.'s economic loss rule precludes a civil conspiracy claim in this case; and third, because plaintiffs have not adequately pleaded facts sufficient to state a civil conspiracy claim.  See Mot. to Dismiss at 19–26.  The Court disagrees on all three fronts.

In D.C., the elements of a civil conspiracy claim are "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 738 (D.C. 2000) (quotation omitted).  To state the elements of civil conspiracy is itself nearly enough to refute Omni Shoreham's first argument.  Only one party to the agreement need have committed an "unlawful overt act," and nothing in the elements of the claim requires that party to be the one against which the civil conspiracy claim is being asserted. See id.  Indeed, the very purpose of civil conspiracy is to serve as a "means [of] establishing vicarious," as opposed to direct, "liability for the underlying tort." Id. (emphasis added) (quotation omitted).  The gist of plaintiffs' civil conspiracy claim is that Omni Shoreham and John Doe Organization entered into an agreement for John Doe Organization to tortiously interfere with the Gala Contract.  The underlying tort, therefore, that defendants are alleged to have conspired to commit, is the tortious interference with contractual relations claim against John Doe Organization.

Omni Shoreham relies primarily on Browning v. Clinton, 292 F.3d 235 (D.C. Cir. 2002), as support for its argument that plaintiffs must assert an underlying tort against Omni Shoreham to maintain their civil conspiracy claim.  See Reply Br. at 15–16.  In Browning, the plaintiff had asserted a variety of tort claims against several defendants, including former President Clinton, and a civil conspiracy claim against each defendant.  Browning, 292 F.3d at 241–42.  The district court dismissed every tort claim under Rule 12(b)(6) for failure to state a claim, and also dismissed the civil conspiracy claims, because plaintiff "failed to plead an underlying tort." Id. at 245.  The D.C. Circuit then affirmed the dismissal of all claims against all defendants, save two: the court

15

revived a tortious interference claim against Clinton, which also required it to "reverse the dismissal of the common law civil conspiracy claim" against Clinton.  Id.  "As to the other [defendants]," the court "affirm[ed] the dismissal of the civil conspiracy claim because . . . [plaintiff] has failed to allege an underlying tort against any of them."  Id.  It is this last statement that Omni Shoreham relies on for its argument that a civil conspiracy claim against it must fail if no underlying tort is also alleged against it, reasoning that if it were otherwise, the Browning court would have revived the civil conspiracy claims against the other defendants as well.  See Reply Br. at 16.

However, Omni Shoreham reads too much into this isolated statement.  To start, contrary to Omni Shoreham's assertion, see id. at 16 n.6, it is unclear from Browning precisely what was alleged in the civil conspiracy claims against the other defendants—it might well be the case that those claims had nothing to do with the tortious interference claim against Clinton, in which case there would be no underlying tort supporting the claims, even after the tortious interference claim against Clinton was revived.[9]  And giving the statement the interpretation Omni Shoreham proposes would put Browning in tension with the only case it cites as support in its discussion of civil conspiracy, Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1988), wherein the D.C. Circuit emphasized that "[a] conspirator need not participate actively in or benefit from the wrongful action in order to be found liable," id. at 481.

In any event, whatever the Browning court intended with its statement, the D.C. Circuit has since made clear that the "only purpose" of a civil conspiracy claim "is to spread liability for a successful tort claim to all agreeing parties regardless of whether they actually committed the tortious act."  Nader v. Democratic Nat'l Comm., 567 F.3d 692, 697 (D.C. Cir. 2009) (emphasis

---

[9] The district court opinion does not precisely detail the allegations in the civil conspiracy claims, either.  See Mem., Browning v. Clinton, No. 98-cv-1991, at 2, 13–14, 24 (D.D.C. Feb. 12, 2001), ECF No. 109.

added); see also Hall v. Clinton, 285 F.3d 74, 82 (D.C. Cir. 2002) (noting that civil conspiracy

"serves . . . as a device through which vicarious liability for the underlying wrong may be imposed

upon all who are a party to it" (internal quotation marks omitted)).  That purpose would be foiled

entirely if, as Omni Shoreham suggests, only parties that had an underlying tort asserted against

them could be held liable for civil conspiracy.

That is, perhaps, why judges in this District have—even after Browning—permitted civil

conspiracy claims to proceed against parties that had no underlying tort asserted against them.  See,

e.g., Rawlings v. District of Columbia, 820 F. Supp. 2d 92, 103–08 (D.D.C. 2011) (concluding

that "plaintiff's allegation that [defendant 1] entered into an agreement with [defendant 2] to

commit an assault and battery is cognizable as a claim for civil conspiracy," despite the fact that

the court had granted summary judgment for defendant 1 on the claim of assault and battery); de

Lupis v. Bonino, 2010 WL 1328813, at *10 (D.D.C. Mar. 31, 2010) (stating that "if the plaintiff

successfully proves a claim of fraud or conversion against [defendant 1], [defendant 2] could also

be held liable for fraud and conversion based on the theory that he was [defendant 1's] co-

conspirator").  Likewise, this Court accordingly rejects Omni Shoreham's first argument against

the civil conspiracy claim.[10]

Omni Shoreham's second argument, that the civil conspiracy claim is precluded by the

economic loss rule, fares no better.  In the case adopting that rule, Aguilar v. RP MRP Wash.

Harbour, LLC, 98 A.3d 979 (D.C. 2014), the D.C. Court of Appeals stated that the rule "prohibits

---

[10] The two other cases that Omni Shoreham cites as support for its first argument are no more persuasive, and indeed demonstrate the error in the argument.  In Daisley v. Riggs Bank, 372 F. Supp. 2d 61 (D.D.C. 2005), the court dismissed a civil conspiracy claim against one defendant because the sole underlying tort had already been dismissed as to that defendant and could not be maintained against any other defendant, see id. at 72–74.  The problem with the civil conspiracy claim was not that the underlying tort was asserted against someone else, but that there was no underlying tort at all.  See id. at 73.  And in Bakeir v. Cap. City Mortg. Co., 926 F. Supp. 2d 320 (D.D.C. 2013), the court did dismiss a civil conspiracy claim, but again did so because no cognizable underlying tort had been asserted at all, against any defendant, see id. at 339.

claims of negligence where a claimant seeks to recover purely economic losses sustained as a result of an interruption in commerce caused by a third party," id. at 980 (emphasis added).  Once again, to state the law is to refute Omni Shoreham's argument.  The underlying claim supporting plaintiffs' civil conspiracy claim is a tortious interference with contractual relations claim—not a negligence claim.  As a result, the economic loss rule has no application here.

Lastly, Omni Shoreham maintains that plaintiffs have failed to adequately plead the elements of civil conspiracy.  This argument mostly relies on Omni Shoreham's incorrect view that the underlying tort needs to be asserted against it, rather than against John Doe Organization.  To repeat, the elements of civil conspiracy are "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme."  Exec. Sandwich Shoppe, 749 A.2d at 738 (quotation omitted).  To show that an agreement existed, "a plaintiff need not allege that an express or formal agreement was entered into"; indeed, "in most civil conspiracy cases, courts are required to infer an agreement from indirect evidence."  Lagayan v. Odeh, 199 F. Supp. 3d 21, 30 (D.D.C. 2016) (internal quotation marks omitted).

Here, plaintiffs have alleged that, despite having full knowledge of the Gala Contract, the Hotel—against plaintiffs' stated wishes—relocated the 2019 Gala to inferior rooms to accommodate John Doe Organization in the ballrooms that plaintiffs had contracted for in December 2018.  See Compl. ¶¶ 16–29, 33–34.  Moreover, plaintiffs allege that by contracting with the Hotel to hold an event in the space and at the time already reserved for plaintiffs, John Doe Organization intentionally procured Omni Shoreham's breach of the Gala Contract.  Id. ¶ 17.  That ill-gotten breach, plaintiffs allege, harmed them by forcing them to search for an alternative

venue and incur expenses.  Id. ¶¶ 30–34.  From these allegations, an agreement between Omni Shoreham and John Doe Organization to further the common scheme of holding John Doe Organization's event at the Hotel, by means of tortiously interfering with the Gala Contract, can be inferred.  Thus, plaintiffs have adequately pleaded a civil conspiracy claim against Omni Shoreham.

Accordingly, the Court will deny Omni Shoreham's motion to dismiss as to Count IV.

## Conclusion

For the foregoing reasons, the Court will deny Omni Shoreham's motion to dismiss.  A separate order has been issued on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: July 22, 2020