UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INOVA HEALTH CARE SERVICES, FOR INOVA FAIRFAX HOSPITAL AND ITS DEPARTMENT, LIFE WITH CANCER, et al.,<br>    Plaintiffs,<br>    v.<br>OMNI SHOREHAM CORPORATION, et al.,<br>    Defendants. | Civil Action No. 20-784 (JDB) |

## MEMORANDUM OPINION & ORDER

Plaintiffs are three non-profit organizations that support cancer patients and their loved ones. This action arises out of a contract with the Omni Shoreham Hotel in Washington, D.C. (the "Hotel") to host plaintiffs' annual fundraising gala in September 2019. The Hotel informed plaintiffs that it was relocating their event to rooms at the Hotel other than the ballrooms named in the contract because the designated ballrooms had been reserved by another party. Unsatisfied with the replacement rooms offered, plaintiffs relocated their event to another location entirely and brought suit against Omni Shoreham Corp. ("Omni") and the entity that rented the rooms initially reserved for plaintiffs' gala, alleging breach of contract and of the implied warranty of good faith and fair dealing, tortious interference with contractual relations, and civil conspiracy. In July 2020, the Court denied Omni's motion to dismiss two plaintiffs and three claims from the initial complaint. Plaintiffs subsequently amended their complaint to name the Embassy of Lebanon (the "Embassy") as a defendant, and Omni filed another motion to dismiss. The present motion broadly overlaps with Omni's original motion to dismiss except that now Omni also seeks to dismiss plaintiffs' breach of contract claim. For the following reasons, the Court will again deny Omni's motion.

1

**Background**

The following factual background relies on the allegations set forth in the Amended Complaint, which the Court must accept as true for purposes of evaluating the present motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Plaintiffs are three non-profit organizations that provide education and support to cancer patients and their families: Inova Health Care Services, for Inova Fairfax Hospital and its Department, Life with Cancer ("Life with Cancer"); Smith Center for Healing and the Arts ("Smith Center"); and Special Love, Inc. ("Special Love"). See Am. Compl. [ECF No. 26] ¶¶ 1–3. Much of the funding for plaintiffs' programs comes from the annual Joan Hisaoka "Make a Difference" Gala (the "Gala"), which raises about $2,000,000 per year, making it the "single largest annual fundraising event for Life With Cancer and the Smith Center," and "a significant fundraising event for Special Love." See id. ¶¶ 8–9, 21. From 2013 through 2018, the Gala was held at the Hotel. Id. ¶¶ 8, 12. Pursuant to a fundraising agreement, plaintiffs authorized Robert G. Hisaoka to coordinate and contract for the execution of the 2019 Gala as their agent. Id. ¶ 9.

In December 2018, Hisaoka entered into a contract with Omni on behalf of Life with Cancer (the "Gala Contract") to reserve the "usual and customary" ballroom space and hosting services at the Hotel for the 2019 Gala to be held on September 21, 2019. Id. ¶¶ 9, 11–12. The Gala Contract detailed the times and locations at the Hotel for the several component events of the 2019 Gala, including various events to be held in the Hotel's Regency and Ambassador Ballrooms. Id. ¶ 12. The Gala Contract further provided that it would "be binding upon the Hotel and [Life With Cancer]," and that "[a]ny changes, additions, stipulations, or decisions by either the Hotel or [Life With Cancer] . . . will not be considered agreed to or binding unless such modifications have been initialed or otherwise approved in writing by both parties." Id. ¶¶ 13–14. Pursuant to the

2

Gala Contract, plaintiffs submitted a deposit check for $10,000, dated December 31, 2018, drawn on Smith Center "under [the] fundraise[ing] agr[eement]." Id. Ex. E at 4 (image of check).

Approximately two months before the Gala was scheduled to take place, on July 8, 2019, Omni informed Hisaoka that the Hotel was relocating the Gala from the Regency and Ambassador Ballrooms to the Hotel's Blue Room, Blue Pre-Event spaces, Roberts Restaurant, and adjacent outdoor terraces. Id. ¶ 16. Plaintiffs' counsel responded the following day asserting "that any attempt to relocate the [Gala] to the other locations in the Hotel would be considered a clear and absolute breach of the [Gala Contract] by the Hotel" and demanding that the Hotel reverse its decision to relocate the Gala. Id. Ex. C at 1–2. As recounted in the Amended Complaint, plaintiffs' counsel insisted in communications with Omni that the Blue Room was "grossly inadequate to meet the needs of the Gala" and a "clear and complete downgrade from what Gala guests had become accustomed to" that "was likely to tarnish the brand of the Gala and leave the impression that the Gala had been cheapened, . . . adversely affect[ing] the Gala's fundraising efforts." Id. ¶ 27. For example, compared to the Regency and Ambassador Ballrooms, plaintiffs complained the Blue Room was "marred by obstructive views," had "low ceilings," could not "accommodate the required stage set up," and was "too small to allow volunteers to navigate the room effectively for the live auction and related programs." Id. Likewise, plaintiffs' counsel charged that the Roberts Restaurant and its adjacent outdoor spaces could not comfortably fit the Gala's silent auction, lacked privacy, and exposed Gala guests to unpredictable weather variations. Id. ¶ 28. Nevertheless, the Hotel refused plaintiffs' request to rescind the relocation of the Gala. Id. ¶ 24.

As plaintiffs have since discovered, Omni had contracted with the Embassy to host a conference at the Hotel from September 19 through 23, 2019, including use of the Regency and Ambassador Ballrooms on September 21. Id. ¶ 18. The Embassy's conference was estimated to

generate over $312,000 in revenue for the Hotel, compared to just $106,000 expected from the Gala.  Id.  Plaintiffs allege that the Embassy was aware of the Gala at the time it contracted with the Hotel to host its conference.  Id. ¶ 17.

Meanwhile, plaintiffs informed Omni that they were unwilling to accept what they considered an inferior substitute venue for the Gala and that they would file suit.  Id. ¶ 33.  "After spending considerable time and effort searching for an alternative venue," on July 30, 2019, Hisaoka entered into an agreement as plaintiffs' agent with the Mandarin Oriental Hotel to hold the Gala there on the scheduled date of September 21, 2019.  Id. ¶ 35.  The cost of hosting the Gala at the Mandarin Oriental was "significantly higher," and plaintiffs also incurred over $90,000 in attorney's fees and expenses in their disputes with Omni up to and including the present action.  Id. ¶ 37.  Furthermore, "[p]laintiffs' fundraising efforts were significantly damaged" by the relocation, with revenue underperforming expectations by $284,700.  Id. ¶ 38.

Plaintiffs filed the instant action in D.C. Superior Court on March 2, 2020.  See Compl. [ECF No. 1-3] at 20.  They sued Omni for breach of contract (Count I) and breach of the covenant of good faith and fair dealing (Count II); they sued John Doe Organization (now known to be the Embassy) for tortious interference with contractual relations (Count III); and they sued both Omni and the Embassy for civil conspiracy to commit tortious interference (Count IV).  Id. ¶¶ 35–53.  On March 20, 2020, Omni removed the suit to this Court, see Notice of Removal [ECF No. 1] at 1, and moved to dismiss on several grounds, see Omni's Mem. in Supp. of Mot. to Dismiss ("Initial Mot.") [ECF No. 3-1] at 1.  First, Omni moved to dismiss Smith Center and Special Love for lack of subject matter jurisdiction, alleging that they lacked standing.  Id. at 2.  Omni also moved to dismiss Counts II, III, and IV for failure to state a claim.  Id.  This Court denied Omni's motion

on July 20, 2020.  See Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp., Civ. No. 20-784, 2020 WL 4201661 (D.D.C. July 22, 2020) [ECF No. 13].

After learning that the John Doe Organization that hosted its conference in the Regency and Ambassador Ballrooms on the date that the 2019 Gala was scheduled to take place was in fact the Embassy, plaintiffs sought and received leave to amend their complaint to name the Embassy as a defendant with Omni's consent.  See Consent Mot. for Leave to File First Am. Compl. [ECF No. 25] at 1; Min. Order (Dec. 17, 2020).  Other than naming the Embassy and including some details gleaned from discovery about the Embassy's contract with Omni, the allegations in the Amended Complaint—including the substance and numbering of the four counts against Omni and the Embassy—are substantially identical to those in the original complaint.  See Am. Compl. ¶¶ 17–20, 32; compare Am. Compl. ¶¶ 39–57, with Compl. ¶¶ 35–53.

Omni has now filed a second motion to dismiss, this time regarding the Amended Complaint.  See Omni's Mem. in Supp. of Mot. to Dismiss Pls. Smith Ctr. & Special Love Pursuant to Rule 12(b)(1) & Counts I, II & IV of Pls.' First Am. Compl. Pursuant to Rule 12(b)(6) ("Mot.") [ECF No. 29-1].  In large part, Omni's motion repeats three of the same arguments that this Court rejected in its July 2020 Memorandum Opinion, asserting that Smith Center and Special Love lack standing to sue and that Counts II and IV fail to state a claim.  Id. at 3.  Unlike in its initial motion, however, Omni now seeks to dismiss plaintiffs' breach of contract claim in Count I as well.  Id.[1] For their part, plaintiffs oppose Omni's motion both on the merits and under the law of the case doctrine and insist that they have stated a claim for breach of contract sufficient to withstand dismissal under Rule 12(b)(6).  See Pls.' Opp'n to Def.'s Mot. to Dismiss Counts I, II & IV of

---

[1] Also different from Omni's initial motion, Omni no longer seeks to dismiss Count III alleging tortious interference, as that count was brought exclusively against the Embassy.  See Mot. at 23; see also Inova, 2020 WL 4201661, at *7.

5

Pls.' First Am. Compl. ("Pls.' Opp'n") [ECF No. 31] at 2.  The Court will first examine whether Omni's repeated arguments now require a different result than the one reached in July 2020 before turning to the merits of whether plaintiffs have stated an actionable claim for breach of contract.

## **Legal Standard**

A motion to dismiss under Rule 12(b)(1) challenges a court's power to hear a plaintiff's legal claims.  To withstand a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015).  When reviewing such a motion, "the district court may consider materials outside the pleadings," but nonetheless "must still accept all of the factual allegations in [the] complaint as true."  Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (internal quotation marks and citation omitted).

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint's allegations.  To withstand a Rule 12(b)(6) motion, the complaint (and each challenged count) "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true all of the plaintiff's allegations of fact, and must also 'grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Edwards v. United States, No. 18-cv-2560 (KBJ), 2020 WL 2800605, at *5 (D.D.C. May 29, 2020) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  "However, the court need not accept inferences . . . [that] are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**Analysis**

I.  **Law of the Case**

As plaintiffs point out, the Amended Complaint is substantively identical to the original complaint as far as its allegations against Omni are concerned, and Omni's motion largely recycles arguments that were raised and rejected in its first motion to dismiss. See Pls.' Opp'n at 5–7. Therefore, plaintiffs argue, "under the doctrine of law of the case alone, the Court should deny" Omni's motion on all issues covered in the Court's July 2020 ruling "without having to once again consider the same arguments." Id. at 7–8. Specifically, plaintiffs urge the Court to deny (1) the dismissal of Smith Center and Special Love for lack of standing pursuant to Rule 12(b)(1); (2) the dismissal of Count II (breach of the covenant of good faith and fair dealing) for failure to state a claim; and (3) the dismissal of Count IV (civil conspiracy) for failure to state a claim. Id. Omni disagrees, asserting that "the Court's Order denying Omni's motion to dismiss the original complaint was an interlocutory order and, therefore, not subject to the law-of-the-case doctrine." Def.'s Mem. in Reply to Pls.' Opp'n ("Reply") [ECF No. 32] at 4.

There is a kernel of truth to Omni's position: the law of the case doctrine does not bind the Court to its prior interlocutory order. Hamilton v. Geithner, 616 F. Supp. 2d 49, 54–55 (D.D.C. 2009) ("[I]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment." (quoting Filebark v. U.S. Dep't of Transp., 555 F.3d 1009, 1013 (D.C. Cir. 2009))). But it does not follow that the Court must reconsider its prior interlocutory order. See Berryman-Turner v. Dist. of Columbia, 233 F. Supp. 3d 26, 35 (D.D.C. 2017). Rather than a mandatory on/off switch, the law of the case "doctrine is a prudential bar that 'directs a court not to alter a previous judicial determination unless unusual circumstances are present.'" Id. (quoting United States v. Eilberg, 553 F. Supp. 1, 3 (D.D.C. 1981)). For example,

7

reversal of a prior ruling may be warranted when "the Court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or [when] a controlling or significant change in the law has occurred." Hamilton, 616 F. Supp. 2d at 54 (quoting Isse v. Am. Univ., 544 F. Supp. 2d 25, 29 (D.D.C. 2008)). The party seeking reconsideration must also show that "some sort of 'injustice' will result if reconsideration is refused." Id. (quoting Cobell v. Norton, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)). In the absence of any such circumstances, though, "the same issue presented a second time in the same case in the same court should lead to the same result." LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

Omni has not identified any special circumstances warranting departure from the Court's prior ruling here. As a threshold matter, Omni's arguments as to standing and Counts II and IV mirror those the Court previously rejected. Indeed, much of Omni's present motion appears to import large portions of its prior unsuccessful motion verbatim. Compare, e.g., Mot. at 15, with Initial Mot. at 11.[2] Although Omni's reply brief argues forcefully against rejecting its motion under the law of the case doctrine, it neglects to identify any new legal theories or changes in governing law and does not advance any novel attacks on the complaint that were not previously before the Court. Instead, the only "argument[] which the Court has not previously addressed . . . is [p]laintiffs' failure to allege a breach of terms material to the parties' agreement," Reply at 4, which the Court will address on the merits below.

A careful reading of Omni's motion does reveal two points of disagreement with the Court's prior ruling, which the Court will now address. First, Omni argues that, contrary to the

---

[2] Omni even appears to have forgotten to update the section headings in its brief to account for the changes in its argument. See Mot. at 4 (section heading reading "Rule 12(b)(6)'s Standard for Dismissing Counts II–IV of the Amended Complaint" despite this motion moving to dismiss Counts I, II, and IV).

8

Court's July Memorandum Opinion, "[t]he Amended Complaint does not allege that Smith Center and Special Love have participated in the Gala since 2013, . . . nor can any inference to that effect be reasonably drawn." Mot. at 14 (emphasis omitted). The Court stands by its prior ruling that the facts alleged at least "arguably support an inference" that Smith Center and Special Love were third-party beneficiaries of the Gala Contract. See Inova, 2020 WL 4201661, at *4 (quoting Monument Realty LLC v. Wash. Met. Area Transit Auth., 535 F. Supp. 2d 60, 70 (D.D.C. 2008)). The Court's ruling that Smith Center and Special Love have prudential standing as potential third-party beneficiaries was based simply on their "previous participation" in the Gala, which "arguably put Omni Shoreham on 'sufficient notice' that the Gala Contract 'was for [their] benefit'" in addition to Life with Cancer's. Id. (quoting Piedmont Resol., L.L.C. v. Johnston, Rivlin & Foley, 999 F. Supp. 34, 49 (D.D.C. 1998)).

This analysis holds regardless of how many years Smith Center and Special Love participated in the Gala as long as some prior involvement is alleged. The Amended Complaint states that the Gala's purpose since its 2008 inception has been "to raise money to support organizations that bring hope and healing to those faced with serious illness," Am. Compl. ¶ 8, which plausibly encompasses the missions of Smith Center and Special Love, see id. ¶¶ 2–3. The Amended Complaint further implies that Smith Center and Special Love have participated in the Gala in previous years by alleging that "[t]he Gala is the single largest annual fundraising event for . . . Smith Center, as well as a significant fundraising event for Special Love," and that "Smith Center[] and Special Love have relied on this Gala" to fund their programming. Id. ¶ 21. Finally, the Amended Complaint includes an image of plaintiffs' deposit check to the Hotel, made in the name of Smith Center. Id. Ex. E at 4. Without deciding whether Smith Center and Special Love actually were third-party beneficiaries, see Inova, 2020 WL 4201661, at *5, the Court sees no

9

reason to alter its conclusion that they have pled facts sufficient to support an inference that they were.

Omni also takes issue with the Court's prior rejection of its argument that the economic loss rule precludes recovery on Count IV for civil conspiracy. See Mot. at 26 n.8. Omni asserts—as it had in its initial motion to dismiss—that "no tort can be maintained against Omni (or even the Embassy) as a matter of law" because "the 'economic loss rule' . . . precludes recovery for solely pecuniary loss (as opposed to personal injury or property damage)." Id. at 24; see also Initial Mot. at 20. As the Court held previously, the economic loss rule precludes recovery for purely pecuniary damages arising out of a claim for negligence, but not for civil conspiracy to commit tortious interference with contractual relations. See Inova, 2020 WL 4201661, at *9 (citing Aguilar v. RP MRP Wash. Harbour, LLC, 98 A.3d 979, 980 (D.C. 2014)). Omni now complains that "[t]he Court cited no authorities specifically holding that only tort claims sounding in negligence implicated the economic loss rule," and asserts that the cases Omni has cited "tend to contradict the Opinion's view in this respect." Mot. at 26 n.8. Omni was wrong about the applicability of the economic loss rule in its first motion to dismiss, and it is wrong again here for the same reason.

It is a matter of hornbook law that "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement (Second) of Torts § 766 (emphasis added). "Intentional tort actions based on . . . tortious interference with contract . . . routinely allow recovery of purely economic losses." Vincent R. Johnson, The Boundary-Line Function of the Economic Loss Rule, 66 Wash. & Lee L. Rev. 523, 533 (2009). Because the economic loss rule does not preclude plaintiffs from alleging

10

tortious interference, it does not undermine their civil conspiracy claim based thereon. See <u>Zaccari v. Apprio, Inc.</u>, 390 F. Supp. 3d 103, 112 (D.D.C. 2019) ("To state a claim for civil conspiracy, [plaintiff] must allege an agreement to commit some 'independently actionable' underlying wrong 'for which a remedy may be obtained.'" (quoting <u>Hall v. Clinton</u>, 285 F.3d 74, 82–83 (D.C. Cir. 2002))). Hence, it goes without saying that the Court stands by its prior ruling on this point.

Besides Omni's failure to provide any compelling legal justification for the Court to revise its prior conclusions, it has not articulated any injustice that would result should the Court decline to do so. See <u>Hamilton</u>, 616 F. Supp. 2d at 54 ("[T]he movant must demonstrate that some harm . . . would flow from a denial of reconsideration." (quoting <u>Cobell</u>, 355 F. Supp. 2d at 540)). The only potential harm Omni identifies in foregoing consideration of its repeat arguments is "the risk of waiving [those arguments] for future appeal." Reply at 3. That risk has been effectively allayed by the submission of Omni's motion and is in no way exacerbated by the Court's denial thereof. Hence, the Court will deny Omni's motion as to Smith Center and Special Love, and as to Counts II and IV, for the reasons stated above and elaborated at length in the Court's July 2020 Memorandum Opinion.

## II. Count I – Breach of Contract

All that remains to be decided is Omni's novel argument that Count I fails to state a claim for breach of contract because "plaintiffs have not alleged a material breach of the agreement." Mot. at 16. Omni asserts that "the Court needs to consider whether the specific rooms" identified in the Gala Contract were material to the agreement in order to determine whether plaintiffs have adequately pled their breach of contract claim. <u>Id.</u> at 17. Plaintiffs retort that "a claim for damages based on breach of contract does not require an allegation that the breach be solely of a 'material term.'" Pls.' Opp'n at 15. The Court agrees with plaintiffs.

None of the cases cited by Omni dismissed a breach of contract claim for failure to allege breach of a material term.[3]  See Mot. at 17–18.  This is not surprising, since "[t]he determination whether a material breach has occurred is generally a question of fact" except in the extreme circumstance where "there is only one reasonable conclusion" on materiality, in which case "a court must address what is ordinarily a factual question as a question of law." America v. Preston, 468 F. Supp. 2d 118, 122 (D.D.C. 2006) (quoting 23 Williston on Contracts § 63.3 (4th ed.)).  Such is certainly not the case here.  Omni boldly states that "[c]learly, . . . the specific rooms to which particular events were assigned was immaterial," Mot. at 19, but this conclusion is absurd.  By Omni's logic, the Hotel could unilaterally relocate the Gala to a utility closet without giving rise to a claim for breach of contract because—as a matter of law—it is immaterial to the agreement where in the Hotel the Gala takes place.  The absence of multiple mentions or detailed descriptions of the Regency and Ambassador Ballrooms in the Gala Contract does not by a longshot leave "only one reasonable conclusion" as to the materiality of the rooms to the agreement.  See Mot. at 18–19 (admitting that the Regency and Ambassador Ballrooms appear in the Gala Contract's "Event Details" table but emphasizing that "[n]owhere else in the Agreement are any specific rooms mentioned"); see also Am. Compl. Ex. A at 21.

In an ordinary claim for damages like this one, "to state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." Zaccari, 390 F. Supp. 3d at 110

---

[3] Instead, the authorities Omni relies upon for its material term theory deal with the equitable remedy of rescission—a remedy quite distinct from plaintiffs' breach claim for damages here.  See America v. Mills, 714 F. Supp. 2d 88, 99 (D.D.C. 2010) ("[O]nly a material breach would permit rescission of the Settlement Agreement and reinstatement of plaintiff's claims."); see also Kriesch v. Vilsak, 931 F. Supp. 2d 238, 253 (D.D.C. 2013) (same).  Even then, in America v. Mills for example, the court only reached the question of materiality on the merits after a bench trial, noting it had "previously determined that the question of whether the breach was material should be decided by the finder of fact, and not resolved at the summary judgment stage." America, 714 F. Supp. 2d at 100–01 (citing America, 468 F. Supp. 2d at 125–26).

(quoting Francis v. Rehman, 110 A.3d 615, 620 (D.C. 2015)).  All a plaintiff must do to describe "the nature of defendant's breach," in turn, is "adequately allege defendant 'owed [] a contractual obligation and then breached it.'"  Id. (quoting Chambers v. NASA Fed. Credit Union, 222 F. Supp. 3d 1, 9 (D.D.C. 2016)).  "When those elements are pled, . . . courts have held that plaintiffs have adequately stated a claim."  Burnett v. Am. Fed'n of Gov't Emps., 102 F. Supp. 3d 183, 193 (D.D.C. 2015) (collecting cases).

The Amended Complaint plainly satisfies these threshold conditions.  Plaintiffs allege that the "Event Details" table included in the Gala Contract created a duty for the Hotel to host the main Gala events in the Regency and Ambassador Ballrooms as indicated.  Am. Compl. ¶¶ 12, 42. They further allege that Omni owed a contractual duty to secure written approval for any modifications to the Gala Contract under the provision that "[a]ny changes" to the Gala Contract "will not be considered agreed to or binding unless such modifications have been initialed or otherwise approved in writing by both parties."  See id. ¶ 14.  And plaintiffs allege that Omni breached these contractual obligations "[b]y refusing to make available for the 2019 Gala the Hotel's Ambassador Ballroom and Regency Ballroom," thereby altering the terms of the Gala Contract without plaintiffs' consent.  Id. ¶¶ 24, 43.  Because the Amended Complaint "sufficiently alleges the existence of a contract, its general terms, and the contractual obligation that [Omni] purportedly violated," Burnett, 102 F. Supp. 3d at 193, the Court will deny Omni's motion to dismiss Count I.

## Conclusion

For the foregoing reasons, upon consideration of [29] defendant Omni Shoreham Corporation's motion to dismiss plaintiffs Smith Center and Special Love pursuant to Rule

13

12(b)(1), and to dismiss Counts I, II, and IV of the First Amended Complaint pursuant to Rule 12(b)(6), it is hereby **ORDERED** that [29] the motion is **DENIED.**

  **SO ORDERED.**

/s/<br>JOHN D. BATES<br>United States District Judge

Dated: <u>April 14, 2021</u>