UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INOVA HEALTH CARE SERVICES, FOR INOVA FAIRFAX HOSPITAL AND ITS DEPARTMENT, LIFE WITH CANCER, et al., | |
| **Plaintiffs,** | |
| v. | Civil Action No.  20-784 (JDB) |
| OMNI SHOREHAM CORP., | |
| **Defendant.** | |

## MEMORANDUM OPINION

After this Court granted summary judgment to plaintiffs Inova Health Care Services, for Inova Fairfax Hospital and its Department, Life with Cancer ("Inova") and Smith Center for Healing and the Arts ("Smith Center") (together, "Plaintiffs") on their breach of contract claims, a jury awarded them $225,000.27 in damages.  Then they and defendant Omni Shoreham Corporation ("Omni") filed a suite of post-trial motions and filings.  First, Plaintiffs filed a bill of costs, which Omni contests in part.  Second, Plaintiffs filed a motion for both prejudgment and postjudgment interest.  Third, Omni filed a combined motion to dismiss for lack of jurisdiction and motion for a new trial.  The Court now resolves each matter.

## BACKGROUND

Following the loss of his sister to cancer, Robert Hisaoka started the "Joan Hisaoka 'Make a Difference' Gala" (the "Gala") to raise money for cancer-focused organizations including Inova and Smith Center.  Trial Tr. vol. 1 [ECF No. 134–3] at 89:7–90:2.  From 2013 through 2018, Hisaoka, through his company RGH Management Services ("RGH"), hosted the Gala at the Omni Shoreham Hotel in Washington, D.C. (the "Hotel").  See Omni's Statement of

Undisputed Facts Supp. Omni Mot. for Summ. J. [ECF No. 62–2] ("Omni SUMF") ¶¶ 2, 3; Pls.' Statement of Material Facts as to Which There is No Genuine Dispute [ECF No. 63–2] ("Inova SUMF") ¶ 41.  Originally, the same was to be true for 2019; Hisaoka, on behalf of Inova, entered a contract (the "Agreement") with Omni providing that the Hotel would host that year's gala on September 21.  First Am. Compl. Ex. A [ECF No. 26] ("Agreement") at 1–2, 6.  But on July 8, 2019, Omni informed Inova that the Hotel was relocating the Gala from its traditional locations—the Ambassador and Regency Ballrooms—to other spaces at the Hotel.  Omni SUMF ¶¶ 38–39; Inova SUMF ¶ 80.  Unpleased to say the least, Inova tried to get Omni to reverse course on the relocation, and told Omni it would no longer host the Gala at the Hotel when Omni refused.  Omni SUMF ¶¶ 42–45; Inova SUMF ¶¶ 81, 104.

This suit started in May 2020 when Inova sued Omni in D.C. Superior Court and Omni removed the case to federal court.  Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp. ("Inova I"), Civ. A. No. 20-784 (JDB), 2022 WL 4598578, at *3 (D.D.C. Sept. 30, 2022).  Inova alleged Omni breached the Agreement and the covenant of good faith and fair dealing.  Id.  Omni subsequently counterclaimed, alleging it was Inova who breached the Agreement.  Id.

Years of litigation later, Plaintiffs and Omni moved for summary judgment on all their claims.  Id. at *4.  Initially, this Court denied both motions because of genuine factual disputes. See id. at *16.  In doing so, it determined that Plaintiffs had put forward adequate facts to establish they had standing.  Omni had argued—both in its summary judgment motion and in an earlier motion to dismiss—that Smith Center lacked constitutional and prudential standing because it wasn't a party to the Agreement and there were inadequate facts to show it was a third-party beneficiary to it.  Id. at *5.  But this Court concluded that Smith Center's payments to

Omni for the 2019 Gala and past galas, plus the event's receipt of tax-exempt status due to Smith Center's involvement, was "sufficient evidence of Smith Center's involvement in the Agreement such that a reasonable finder of fact could conclude that Omni had reason to know Smith Center was a third-party beneficiary." Id. at *7. And this Court also rejected Omni's argument that Inova lacked standing because Hisaoka, acting through RGH, didn't have authority to enter the Agreement on Inova's behalf. Id. at *8. Uncontested evidence showed that Inova ratified the Agreement four days after Hisaoka signed it. Id.

After the denial of the parties' summary judgment motions, Plaintiffs moved for reconsideration of their motion. Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp. ("Inova II"), Civ. A. No. 20-784 (JDB), 2023 WL 5206142, at *4 (D.D.C. Aug. 14, 2023). This Court then reexamined its decision and determined that, as Plaintiffs argued, the Court had erroneously determined genuine disputes of material fact existed. Id. Namely, this Court determined on reconsideration that (1) the Agreement unambiguously prohibited room reassignment without Inova's consent, and extrinsic evidence confirmed as much; (2) Omni thus breached the Agreement when it unilaterally relocated the Gala to other rooms; (3) the breach was material because the room assignments were "vital[ly] importan[t]" to Inova's assent to the Agreement; and (4) Omni also breached the covenant of good faith and fair dealing by giving the rooms originally assigned to the Gala—and promised by the Agreement—to another, more lucrative event months after entering the Agreement. Id. at *6–19. Hence, this Court granted Plaintiffs' summary judgment motion on both of their claims and denied Omni's motion altogether. Id. at *19.

That left the issue of damages. The parties first tried to resolve the issue in mediation, but their attempts failed. See Notice Regarding Mediation [ECF No. 87]. Hence, a jury trial on

damages was scheduled.  <u>Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham</u>

<u>Corp.</u> ("<u>Inova III</u>"), Civ. A. No. 20-784 (JDB), 2024 WL 4534156, at *2 (D.D.C. July 16, 2024).

Prior to trial, Omni filed a motion in limine that sought to exclude testimony by

Plaintiffs' damages-analysis expert, David N. Paris.  <u>See</u> Def.'s Mot. in Limine to Exclude or

Limit the Testimony of David N. Paris [ECF No. 95] ("Mot. in Limine").  Omni argued, <u>inter</u>

<u>alia</u>, that Paris's testimony on Plaintiffs' loss of distributions was inadmissible under Federal

Rule of Evidence 702 because it was the product of unreliable methods and principles, and that

those methods were not reliably applied to the facts in the case.  <u>See</u> <u>Inova III</u>, 2024 WL

4534156, at *3.  This Court disagreed.  To start, the "but for" methodology Paris employed was

"a reliable methodology that experts use to determine economic harm."  <u>Id.</u> (quotation marks

omitted).  Plus, Paris's application of that method to the facts of the case was supported by

sufficient evidence to allow the jury to determine its evidentiary weight.  <u>Id.</u>

Then, in its pretrial statement, Omni said it expected to offer several letters between the

parties' counsel.  Def.'s Pretrial Statement [ECF No. 105] at 4.  One letter—which was written

and sent before Plaintiffs started this lawsuit—offered Plaintiffs a $42,479.52 check.  <u>See</u> Letter

from Kristen Reinsch, Litig. Counsel, to Christopher Mahoney (Feb. 27, 2020) [ECF 129–5] at 1

("Prelitigation Letter").  The letter explained that the amount reflected "(1) the hard costs

associated with Inova's change of venue to the Mandarin Oriental, Washington D.C.

($21,624.96); (2) legal fees Inova claims to have incurred in connection with the negotiation of

the new venue contract ($10,851.59); and (3) an additional 30% of the sum of those hard costs

and legal fees to cover additional legal fees incurred in connection with this dispute

($10,003.24)."  <u>Id.</u>  In encouraging Plaintiffs to deposit the check, the letter stated that "Omni

acknowledges and agrees that, if Inova deposits the check, Inova does so subject to Inova's full

reservation of rights and without waiving any claims against Omni related to the change in venue," and that Omni would "sign any reasonable agreement to that effect." Id. To Plaintiffs, the letter was inadmissible as a settlement offer being admitted to "prove . . . the . . . amount of a disputed claim." Fed. R. Evid. 408(a). At a later hearing, the Court agreed and held Omni could not admit the letter, nor the other letters in the same prelitigation exchange. See Draft Hr'g Tr. (July 19, 2024) at 17:2–19:20.

Also before trial, Omni submitted a brief arguing that it should be permitted to present an affirmative defense that Plaintiffs had failed to mitigate damages. See Def.'s Br. in Supp. of Its Affirmative Defense Regarding the Mitigation of Damages [ECF No. 111] ("Mitigation Br."). The argument focused on Omni's offer to host the Gala in alternative spaces at the Hotel and Plaintiffs' rejection of that offer. Id. According to Omni, Plaintiffs' damages would have been far less had they accepted Omni's offer, such that their denial amounted to a neglect of their "duty to take reasonable steps to mitigate their damages based on the circumstances." Id. at 2. This Court did not allow Omni to present that defense. See Order of Aug. 15, 2024 [ECF No. 117] ("Mitigation Order"). Under District of Columbia law,[1] the duty to mitigate does not obligate the nonbreaching party to continue dealing with the breaching party, nor to renegotiate the contract. See id. at 4–6 ("[I]t was not unreasonable for Inova to search for an alternative venue, rather than renegotiate the terms of a contract Omni had just breached."). So this Court prohibited Omni from introducing at trial any evidence regarding that mitigation-of-damages defense, including evidence as to the suitability of the alternative rooms Omni offered. Id. at 6.

At trial, Plaintiffs put forward five witnesses, including Hisaoka and Paris. See Trial Tr. vol. 1 at 88–151; Trial Tr. vol. 2 [ECF No. 134–4] at 41–102. Among other things, Hisaoka

---

[1] The instant dispute is governed by the substantive law of the District of Columbia. See Inova II, 2022 WL 4598578, at *6.

explained the Gala's different revenue streams, e.g. Trial Tr. vol. 1 at 93:19–20, how Omni's breach affected those revenue streams, see id. at 97:4–15, 115:5–17, 116:2–8, 117:2–17, 118:21– 119:16, and that 2019 was the first year in ten years that revenue from the Gala decreased, id. at 96:3–4. As part of this testimony, Plaintiffs introduced the email Omni sent Hisaoka saying that Omni moved the Gala to other rooms. Id. at 110:2–25. Then, on cross-examination, Omni attempted to use the email to ask Hisaoka about the suitability of the alternative rooms it offered Plaintiffs. See id. at 124:16–25. This Court originally permitted limited questions, see id. at 125:23–128:17, but ultimately sustained Plaintiffs' objection because the only relevance of the questioning would be Omni's prohibited mitigation defense, id. at 129:11–16.

As for Paris, he testified about his damage calculations, which included calculations on two scenarios. Trial Tr. vol. 2 at 46:18–24. Both scenarios included estimates of lost gala revenues and lost distributions to the Gala's nonprofit beneficiaries, id., and were based on documents, information, and depositions by the parties, as well as publicly available information about the Gala, id. at 48:1–25. One scenario totaled $337,668 in damages and the other totaled $449,984. Id. at 46:23–24. Paris explained to the jury how he arrived at these numbers, spelling out the differential between the projected revenue of each revenue stream at the 2019 Gala and the actual revenue each stream produced, as well as the resulting distributions. See, e.g., id. at 65:7–67:20.

After Omni rested its case, it objected to a jury instruction on charitable contributions. See id. at 124:4–23. The proposed instruction stated that Plaintiffs could "recover from Omni damages for loss of charitable donations and frustration of their respective missions." Pls.' Proposed Jury Instrs. [ECF No. 116] at 10. Omni argued that, given the other instructions as to damages, the charitable-donation instruction was redundant and confusing. Trial Tr. vol. 2 at

124:14–15.  The Court agreed in part—the instruction's phrasing made it seem like there were "two separate losses: [t]he loss of charitable donations and frustration of the mission," when there was really a single loss.  Id. at 125:12–14.  So the Court added the word "resulting" before "frustration" to clarify.  Id. at 126:6–7.

In the end, the jury awarded Plaintiffs $225,000.27 in damages.  It determined Plaintiffs incurred $37,154.27 of additional costs, and that Inova and Smith Center respectively lost $127,001.65 and $60,844.35 in distributions, due to Omni's breach.  Trial Tr. vol. 3 [ECF No. 134–5] at 3:12–4:1; Jury Verdict [ECF 124] at 1.  Soon after the verdict, Plaintiffs filed (1) a bill of costs totaling $20,919.39 to be taxed to Omni, Pls.' Bill of Costs [ECF No. 127] ("Bill of Costs"), and (2) a motion for prejudgment and postjudgment interest, Pls.' Mot. for Prejudgment Interest & Postjudgment Interest [ECF No. 128] ("Pls.' Mot.").  Then, Omni filed (1) a motion to dismiss for lack of jurisdiction, or alternatively, for a new trial, Def.'s Renewed Mot. to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, for a New Trial [ECF No. 129] ("Def.'s Mot."), and (2) a motion to stay Plaintiffs' bill of costs and objections to that bill of costs, Def.'s Mot. to Stay Bill of Costs & Its Objs. to Pls.' Bill of Costs [ECF No. 130] ("Def.'s Obj. to Costs").  Responses and replies to each motion followed.

## ANALYSIS

This Court will first address Omni's motion to dismiss, or alternatively for a new trial, then will turn to Plaintiffs' motion for prejudgment and postjudgment interest.  Finally, this Court will address Plaintiffs' bill of costs.

## I.    Motion to Dismiss for Lack of Jurisdiction

Omni's first argument is that this Court lacks jurisdiction over this case and thus must dismiss it.  Def.'s Mot. at 4–9.  That is because, according to Omni, Plaintiffs failed to prove at trial they have either Article III or prudential standing.  Id.  The argument is unavailing.

For a federal court to have jurisdiction over a claim, Article III of the Constitution requires that a plaintiff have an injury in fact, caused by the defendant's challenged conduct, and redressable by the requested relief.  Murthy v. Missouri, 144 S. Ct. 1972, 1986 (2024).  An injury in fact is one that is "concrete, particularized, and actual or imminent."  Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).

In addition to Article III standing, a plaintiff must have prudential standing.  Deutsche Bank Nat. Tr. Co. v. FDIC, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013) ("Prudential standing, like Article III standing, is a threshold, jurisdictional concept.").  Instead of being sourced from the Constitution, "these judicially self-imposed limits on the exercise of federal jurisdiction are founded in concern about the proper—and properly limited—role of the courts in a democratic society."  Bennett v. Spear, 520 U.S. 154, 162 (1997) (internal quotations omitted).  One limit imposed by prudential standing is that a plaintiff "generally must assert his own legal rights and interests[] and cannot rest his claim to relief on the legal rights or interests of third parties."  Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474 (1982) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1992)).  Accordingly, in this Circuit, a plaintiff suing for breach of contract "lack[s] prudential standing to enforce" the contract if he was "neither [a] part[y] nor intended third-party beneficiar[y] to th[e] contract."  Deutsche Bank, 717 F.3d at 194.  A party is a third-party beneficiary of a contract if "the

contracting parties had an express or implied intention to benefit directly the party." Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1064 (D.C. 2008).

Throughout the course of litigation, "[t]he party invoking federal jurisdiction bears the burden of establishing" standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. And because standing is jurisdictional, an objection to standing "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006).

As it did in its motion to dismiss and summary judgment motion, Omni contends that both plaintiffs failed to establish standing. Now, however, Omni's arguments rest on what was and wasn't presented at trial. In Omni's view, this Court lacks jurisdiction because Plaintiffs "failed to present evidence at trial demonstrating either prudential standing or Article III standing." See Def.'s Mot. at 5, 9. Smith Center, says Omni, failed to establish standing because it did not present evidence it was a third-party beneficiary of the Agreement, depriving it of a "legally protected interest" to support Article III standing and making it a prohibited third party for prudential standing. Id. at 6. And Omni contends Inova also failed to prove it was a party to the agreement because it didn't present evidence that it ratified the Agreement after Hisaoka signed it on Inova's behalf. Id. at 9.

In response to Omni's arguments, Plaintiffs assert that they were not obligated to prove standing at trial because "only if the facts supporting standing are controverted before trial must they be supported adequately by evidence adduced at trial." Pls.' Opp'n to Def.'s Mot. [ECF No. 134] ("Pls.' Opp'n") at 3. They are correct. The Supreme Court has instructed that, "at the

final stage," facts supporting standing "(<u>if controverted</u>) must be supported adequately by the evidence adduced at trial." <u>Lujan</u>, 504 U.S. at 561 (emphasis added) (internal quotations omitted); <u>see also</u> <u>Gladstone Realtors v. Vill. of Bellwood</u>, 441 U.S. 91, 115 n.31 (1979) ("Although standing generally is a matter dealt with at the earliest stages of litigation, usually on the pleadings, <u>it sometimes</u> remains to be seen whether the factual allegations of the complaint necessary for standing will be supported adequately by the evidence adduced at trial." (emphasis added)).

Here, the facts supporting standing were not controverted at trial. They were all determined to be beyond genuine dispute prior to trial because this Court granted Plaintiffs summary judgment on their claims.[2]  Recall that Plaintiffs' claims were for breach of contract and breach of the covenant of good faith and fair dealing. The grant of summary judgment on the former is sufficient to show they had standing for both claims. To be granted summary judgment on a breach of contract claim, a party must show there's no genuine dispute of material fact as to the following elements: "(1) <u>a valid contract between the parties</u>," or a valid contract to which one party was a third-party beneficiary; "(2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." <u>Zaccari v. Apprio, Inc.</u>, 390 F. Supp. 3d 103, 108 (D.D.C. 2019) (emphasis added); <u>Fort Lincoln Civic Ass'n</u>, 944 A.2d at 1064; Fed. R. Civ. P. 56(a). In other words, by granting Plaintiffs summary judgment on their breach of contract claim, this Court necessarily determined there was no genuine dispute of material fact that both Inova and Smith Center could sue under the Agreement and were harmed

---

[2] Prior findings supporting standing don't guarantee a federal court will always have jurisdiction; a claim may become moot if subsequent events eliminate standing. <u>Genesis Healthcare Corp. v. Symczyk</u>, 569 U.S. 66, 72 (2013); <u>see also</u> <u>U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship</u>, 513 U.S. 18, 20 (1994) (complete settlement mooted the claims). Omni, however, does not assert—nor does any evidence suggest—that anything has occurred since this Court's grant of summary judgment that would moot either or both of Plaintiffs' claims.

by Omni's breach of it.[3]  Hence, before the trial on damages was even scheduled, there was no

dispute that Plaintiffs were asserting their own legal rights as parties to, or beneficiaries of, the

Agreement (prudential standing) and had suffered injuries in fact caused by Omni and

redressable by damages (Article III standing).

Considering the above, it's no surprise that Omni never argued that standing was at issue

in the trial on damages.  Instead, Omni recognized that the trial was "limited to the issue of

Plaintiffs' alleged damages."  Def.'s Pretrial Statement at 2; see also id. at 1 (explaining that the

Court had jurisdiction without mentioning standing).  It never mentioned standing or either

plaintiff's alleged third-party status in its opening or closing statements, or in its questioning on

cross examination.[4]  See generally Trial Tr. vol. 1; Trial Tr. vol. 2.  Omni thus never put standing

at issue for trial.[5]

In sum, standing was not controverted at the trial on damages and so Plaintiffs were not

obligated to present evidence of it.  Lujan, 504 U.S. at 561.  In fact, "[f]ully reopening the

---

[3] In fact, even when it denied the parties' summary judgment motions, this Court recognized that it was uncontested that Inova ratified the Agreement four days after Hisaoka signed it.  Inova I, 2022 WL 4598578, at *8 ("If a party with actual authority ratifies a prior act, 'the legal consequence is that the principal's legal relations are affected as they would have been had the' initial act been taken 'with actual authority at the time of the act.'" (quoting Dentons US LLP v. Republic of Guinea, 410 F. Supp. 3d 194, 212 (D.D.C. 2019))); see also Inova II, 2023 WL 5206142, at *1 n.1; Fundraising Agreement – 2019 [ECF 134–2] ¶ 2(a) (giving Hisaoka authority to enter into "[a]ll contracts and agreements associated with the [Gala] . . . on behalf of" Inova).

[4] It is worth noting that the evidence relevant to standing presented at trial supported, if anything, a determination Inova and Smith Center were parties to or beneficiaries of the Agreement.  See Trial Tr. vol. 1 at 91:13–16 (explaining that Inova was a beneficiary of the Gala since 2010); id. at 102:11–13 (explaining that the Fundraising Agreement between RGH and Plaintiffs identified Inova's responsibilities as a beneficiary of the 2019 Gala); id. at 92:19–22 (explaining that Smith Center was designated as a beneficiary of the Gala from 2008 until 2023; Trial Tr. vol. 2 at 6:15–18 (same).  This Court rejects Omni's argument that testimony that Hisaoka ran and planned the Gala supported a finding that Plaintiffs weren't parties to or beneficiaries of the Agreement.  See Def.'s Mot. at 7–8.  Nothing in D.C. law mandates that a party assist in planning or running an event in order to be a beneficiary or a party to an attendant contract.  See, e.g., Fort Lincoln Civic Ass'n, 944 A.2d at 1064 ("Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status.").

[5] This analysis is not meant to imply that Omni forfeited its standing argument by not putting it at issue at trial.  The Court fully recognizes that standing, as a matter of jurisdiction, cannot be forfeited, and that a federal court is obligated—even absent a party raising the issue—to ensure standing is satisfied throughout a case.  See Jibril v. Mayorkas, 101 F.4th 857, 866 (D.C. Cir. 2024).  This analysis is only meant to show that standing was not contested at trial because the relevant facts were found prior to it.

evidence to present live testimony" on standing would have "be[en] a waste of the time and resources of the parties, as well as the judicial resources of the Court, and would not [have] change[d] the ultimate outcome of this matter." Pub. Emps. for Env't Resp. v. Bright, Civ. A. No. 3:18-13 (TAV-HBG), 2021 WL 1220928, at *5 (E.D. Tenn. Mar. 31, 2021).  So Omni's motion to dismiss is denied.

## II.    Motion for New Trial

As an alternative to its motion to dismiss, Omni moves for a new trial.  It presents five supposed errors it argues warrant a new trial:  (1) it should have been allowed to present evidence on the suitability of the alternative event spaces at the Hotel; (2) Paris's expert opinion testimony should have been excluded; (3) it should have been able to present evidence about the check it tendered to Inova before this lawsuit was initiated; (4) this Court's instruction on loss of charitable donations was legally erroneous and redundant; and (5) the jury's verdict was contrary to the clear weight of the evidence.  Def.'s Mot. at 9–34.  But none of those reasons warrant a new trial.  Accordingly, Omni's motion is denied.

Federal Rule of Civil Procedure 59(a)(1)(A) permits a court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Given this broad instruction, "[t]he authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).

A district court's discretion under Rule 59(a)(1)(A), however, is far from unbridled. Rather, a "court should exercise its discretion to order a new trial 'sparingly and cautiously' because it 'should be mindful of the jury's special function in our legal system and hesitate to disturb its finding.'"  Allen v. Yellen, Civ. A. No. 18-1214 (RC), 2023 WL 3933723, at *2

(D.D.C. June 9, 2023) (quoting <u>Klayman v. Jud. Watch, Inc.</u>, Civ. A. No. 06-670 (CKK), 2019 WL 1244079, at \*5 (D.D.C. Mar. 18, 2019)).  Therefore, "as a general practice, a Rule 59(a) motion should be granted only where the court is convinced that the jury verdict was a seriously erroneous result and where denial of the motion will result in a clear miscarriage of justice." <u>Warren v. Thompson</u>, 224 F.R.D. 236, 239 (D.D.C. 2004) (cleaned up).  While the D.C. Circuit has not specifically defined when a "seriously erroneous result" or a "clear miscarriage of justice" occurs, other circuits have pointed to "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." <u>EEOC v. New Breed Logistics</u>, 783 F.3d 1057, 1066 (6th Cir. 2015) (citation omitted); <u>see also</u> <u>Venson v. Altamirano</u>, 749 F.3d 641, 656 (7th Cir. 2014); <u>Raedle v. Credit Agricole Indosuez</u>, 670 F.3d 411, 417–18 (2d Cir. 2012); <u>Klayman</u>, 2019 WL 1244079, at \*5; <u>Allen</u>, 2023 WL 3933723, at \*2.  What the D.C. Circuit <u>has</u> made clear, though, is that a "jury verdict stands 'unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict.'" <u>Lane v. District of Columbia</u>, 887 F.3d 480, 486 (D.C. Cir. 2018) (quoting <u>Czekalski v. LaHood</u>, 589 F.3d 449, 456 (D.C. Cir. 2009)).  "The burden of showing that a new trial is warranted in accordance with this rigorous standard rests with the moving party." <u>Warren</u>, 224 F.R.D. at 239 (citation omitted).

Finally—and importantly—it is a "well-settled principle that Rule 59 is not a vehicle for relitigating old issues . . . , securing a rehearing on the merits, or otherwise taking a second bite at the apple." <u>Moore v. Hartman</u>, 102 F. Supp. 3d 35, 65 (D.D.C. 2015) (internal quotation marks and citation omitted).  "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." <u>Id.</u> at 66

13

(quoting <u>Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.</u>, 38 F.3d 1279, 1287 (2d Cir. 1994)).

### a. Evidence on the suitability of the alternative rooms at the Hotel

First, Omni claims a new trial is warranted because it should have been permitted to present evidence and argument on the suitability of the alternative spaces it offered for the Gala. In Omni's view, "Plaintiffs opened the door to argument and evidence on that issue through the introduction of an exhibit addressing those spaces' suitability and through testimony from their witnesses." Def.'s Mot. at 9. Without evidence and argument on suitability, says Omni, "the jury was left with a misunderstanding of the facts and an inaccurate impression of the events in question and, most particularly, Plaintiffs' damages." <u>Id.</u> at 10.

This argument is simply an attempt to "relitigat[e] old issues." <u>Moore</u>, 102 F. Supp. 3d at 65. This Court rejected Omni's request to present a defense that Plaintiffs failed to mitigate by not hosting the event in alternative spaces at the Hotel—and thus excluded evidence of the suitability of the alternative spaces—before trial. Mitigation Order at 6. That's because the Court determined that D.C. law dictates that Inova was not obligated to host the Gala in the alternative spaces Omni provided, and so Inova, as a matter of law, acted reasonably by refusing Omni's offer post-breach. <u>Id.</u> at 4 ("[W]here, as here, the question is 'which facts are permissibly considered in assessing whether the [non-breaching party] fulfilled [its] duty to mitigate,' the question is a legal one for the Court to decide." (quoting <u>Sizer v. Lopez Velasquez</u>, 270 A.3d 299, 303 (D.C. 2022))). Evidence that the alternative rooms Omni offered were or were not suitable was thus not relevant to any issue properly before the jury—as Omni recognized at trial by failing to identify any relevance beyond the already-decided issues of

breach and mitigation.  See Trial Tr. vol. 1 at 129:2–16; Trial Tr. vol. 2 at 108:4–110:10; Fed. R.

Evid. 402 (only relevant evidence is admissible).[6]

Omni, in fact, acknowledges its attempt to take a second bite at the mitigation apple.  See

Def.'s Mot. at 17 ("Omni acknowledges this Court's pre-trial ruling on its mitigation of damages

defense but respectfully submits that decision was incorrect.").[7]  Yet nowhere in its motion does

it provide any argument this Court hasn't already rejected, and it still fails to describe how the

suitability evidence was relevant to anything except mitigation.  Indeed, the only argument Omni

makes is that absent the evidence, the jury was left with the impression "the Gala could not be

held in the alternative event spaces that Omni offered . . . , which thereby increased Plaintiffs'

damages because moving the Gala became necessary."  Id. at 12; see also id. at 15 (the evidence

"would have shown that Mr. Hisaoka did not take reasonable steps to investigate the quality and

suitability of the spaces Omni had offered"); id. at 17–18.

Furthermore, Omni's contention that it should be granted a new trial because Plaintiffs

"opened the door" to the suitability evidence falls flat.  Omni points to Plaintiffs' exhibit

---

[6] In its motion for new trial, as at trial, Omni argues that the suitability evidence was relevant for "impeachment."  See Def.'s Mot. at 10, 13, 15; Trial Tr. vol. 2 at 110:7–10.  Yet, as the Court already recognized, "[i]mpeachment isn't an issue that is relevant."  Trial Tr. vol. 2 at 110:9.  It's true, however, that some things for which one can impeach a person are relevant—e.g., contradiction, which goes to a witness's credibility.  See United States v. Fonseca, 435 F.3d 369, 375 (D.C. Cir. 2006).  But while Omni says that evidence of suitability "would have raised a legitimate question regarding Mr. Hisaoka's credibility," the rest of its motion reveals it wanted to introduce the evidence not to simply call Hisaoka's truthfulness into question but to argue that the rooms were suitable and that Hisaoka thus failed to mitigate damages when he rejected the offer of the alternative rooms.  See Def.'s Mot. at 10 ("[T]he jury was left with a misunderstanding of . . . Plaintiffs' damages."); id. at 12 (stating that Hisaoka's testimony left the jury with the impression that "the Gala could not be held in the alternative event spaces . . . which thereby increased Plaintiffs' damages"); id. at 15 ("Omni was prepared . . . [to] show that the facts regarding the alternative event spaces were not as Mr. Hisaoka testified."); id. ("Omni . . . would have shown that Mr. Hisaoka did not take reasonable steps . . . .").  Regardless, even if the evidence was admissible as relevant to Hisaoka's credibility, it was properly excluded under Federal Rule of Evidence 403 because its minimal relevance was substantially outweighed by the risk of confusing the jury as to the issue of mitigation.  See Fonseca, 435 F.3d at 375.

[7] Omni avers that "[t]he purpose of introducing [the suitability] evidence would not be to re-litigate this Court's ruling that Omni had breached the contract."  Def.'s Mot. at 15.  But that's beside the point.  Omni's motion for a new trial still attempts to relitigate this Court's ruling that it could not present argument and evidence on the suitability of the alternative spaces it offered Plaintiffs.

containing the email Omni sent to Hisaoka that told him Omni moved the Gala to alternative spaces and claims that this put the suitability of the spaces at issue, and then asserts Hisaoka's statements on cross examination—which it says were "without any prompting by Omni's counsel on the issue"—pushed the door open further.  Id. at 10–11.  But this Court already decided that the exhibit and statements didn't permit Omni to present suitability evidence.  Trial Tr. vol. 1 at 129:13–16.  The Court stands by this assessment.   "Introduction of otherwise inadmissible evidence" on the ground another party "opened the door" to it "is permitted 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.'"  United States v. Winston, 447 F.2d 1236, 1240 (D.C. Cir. 1971) (quoting Ca. Ins. Co. v. Allen, 235 F.2d 178, 180 (5th Cir. 1956)).   Hisaoka did not testify to the suitability of the alternative spaces on direct examination.  See Trial Tr. vol. 1 at 110:2–112:4 (testimony related to the relocation email).  The email that was entered into evidence only showed that Omni offered Hisaoka alternative spaces; it did not include any response from Hisaoka as to their adequacy.  See Email from David P. Magsumbol, Omni Director of Catering, to Bob Yienger, July 8, 2019 [ECF 129–4] at 1.  So there was no "unfair prejudice" that needed fixing on cross, and the door on inadmissible suitability evidence remained closed.  Cf. Fed. R. Evid. 611(b) (limiting the scope of cross-examination to matters presented on direct examination and matters affecting credibility).

And Hisaoka's statements on cross about the alternative spaces' suitability—even if unprompted[8]—didn't open the door, either.  Because the Court decided as a matter of law that Plaintiffs' decision not to accept the alternative rooms wasn't a breach of their duty to mitigate

---

[8] This Court finds it hard to fully agree that Hisaoka's statements were made "without any prompting by Omni's counsel," Def.'s Mot. at 11, considering Omni's counsel asked whether the alternative "spaces [we]re elegant and more than adequate to accommodate the" Gala and whether Hisaoka was informed of all the spaces and opportunities Omni offered him, and then failed to explain how this questioning was relevant outside of mitigation. See Trial Tr. vol. 1 at 126:4–129:16.

damages, the suitability of those rooms was irrelevant to the one issue before the jury: Plaintiffs' damages.  Hence, notwithstanding Hisaoka's statements, the Court could not have admitted such evidence.  See Fed. R. Evid. 402; see Bitner v. Buttigieg, Civ. A. No. 21-3153 (TNM), 2024 WL 4227152, at *6 (D.D.C. Sept. 18, 2024) (denying motion for new trial where the evidence movant argued should have been admitted was irrelevant).

Finally, even if the Court had erroneously excluded the suitability evidence, Omni's claim of prejudice rests on its supposition that it is "entirely possible, if not probable" the jury was "prejudiced" into thinking Omni was a "bad actor" because Omni didn't provide suitable alternatives, and thus the jury awarded higher damages.  See Def.'s Mot. at 15–16.  But the jury did have evidence that Omni provided alternative spaces for the event (i.e., the relocation email).  So the jury knew that Omni didn't leave Inova in a complete lurch.  "The prejudice, if any, from excluding the" suitability evidence "was thus minimal."  McNair v. Gov't of D.C., 124 F. Supp. 3d 13, 18 (D.D.C. 2015).

In sum, Omni failed to show the Court's exclusion of the suitability evidence was legally erroneous, let alone led to a "seriously erroneous result" or a "clear miscarriage of justice" that would warrant casting aside the jury's verdict.  Its motion for a new trial on this ground thus fails.  See Warren, 224 F.R.D. at 239.

### b.  Paris's testimony

Omni's second argument for a new trial is that the Court should have excluded Paris's testimony that Plaintiffs received lower distributions from the 2019 Gala as a result of Omni's breach.  Def.'s Mot. at 18–23.  Here, Omni is even more transparent that it seeks to relitigate this Court's prior ruling; its rationale as to why the admission of Paris's testimony warrants a new trial is that, "[a]s shown in Omni's memorandum of law in support of its motion to exclude that

testimony, which is incorporated [into Omni's motion] by reference, Mr. Paris'[s] opinions about the Gala distributions are not the product of reliable principles and methods and do not reflect a reliable application of such principles and methods to the facts of this case." Id. at 18. As before, "[n]either argument persuades the Court." Inova III, 2024 WL 4534156, at *3.

Beyond its reliance on its already-denied motion in limine arguments, Omni points to certain testimony from trial that it asserts shows Paris's methodology was unreliable. First, it highlights Hisaoka's testimony on cross that "[a]nything is possible" when it comes to why attendees or donors could alter their participation in the Gala from year to year. Def.'s Mot. at 18–19. Omni states that it "is in complete agreement with Mr. Hisaoka here" and thus Hisaoka's testimony shows that Paris's opinion calculated by the "but for" methodology was "pure fiction dressed up as expert testimony." Id. at 19. Yet this Court already confirmed that the "but for" methodology Paris employed "is a 'reliable methodology' that experts use to determine economic harm." Inova III, 2024 WL 4534156, at *3 (collecting cases). This Court is hard-pressed to see why another witness's vague testimony has any bearing on the consensus among economic experts and courts.

Second, Omni posits that Paris's methodology was unreliable because he "lack[ed] any personal knowledge about the Gala or its finances" and "conceded that to form his opinions, he only ever spoke to" Hisaoka and the Gala's escrow agent. Def.'s Mot. at 19. Relying on people with "personal interest in the . . . case" rather than on "independent sources" and "objective criteria" shows, in Omni's view, that Paris's opinion was based on a methodology prohibited by Federal Rule of Evidence 702. Id. at 19–22. This argument, however, ignores the reality of Paris's methodology: he used a range of sources relied upon by experts employing the but-for methodology. See Inova III, 2024 WL 4534156, at *3 ("Paris testified that in 'creating an

economic analysis of how the gala . . . would have operated in the but for world,' he 'review[ed] documents, . . . talk[ed] to knowledgeable people, and . . . model[ed] what would have happened or how, in this instance, the gala operates and where its revenues come from,' which included reviewing financial data on income streams from 2013 through 2018." (quoting Dep. of David Paris [ECF No. 96–8] at 45:13–48:6)); Trial Tr. vol. 2 at 48:1–25 (Paris explaining his opinions were based on documents, information, and depositions of the parties, and publicly available information regarding the Gala).  The fact that Paris trusted Hisaoka's statements or possibly failed to track down other relevant sources of information "go[es] to the weight of the evidence rather than its admissibility."  Inova III, 2024 WL 4534156, at *3 (quoting Groobert v. President & Dirs. of Georgetown Coll., 219 F. Supp. 2d 1, 9 (D.D.C. 2002)).

Lastly, Omni points to the fact that Paris presented two estimated damages amounts based on two different scenarios, yet the jury did not award either of those precise dollar figures. Def.'s Mot. at 22–23.  This discrepancy, per Omni, "suggests that the jury did not find Mr. Paris'[s] testimony reliable."  Id. at 23.  This logic is self-defeating.  For one, the jury was free to give Paris's testimony as much weight as it determined suitable; that it didn't fully buy Paris's opinion has no bearing on the testimony's admissibility.  Cf. Rothe Dev., Inc. v. U.S. Dep't of Def., 107 F. Supp. 3d 183, 197 (D.D.C. 2015) (distinguishing weight from admissibility).  For another, Omni inadvertently argues that any error that may have resulted from the admission of Paris's testimony was harmless.  If the jury disregarded it anyway, its admission is no ground for a new trial.  11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2805 (3d ed. 2024) (hereinafter, "Federal Practice") ("[I]t is only those errors that have caused substantial harm to the losing party that justify a new trial."); see also Fed. R. Civ. P. 61 ("Unless justice

requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial.").

The upshot is that Omni "presents no reason for this Court to revisit its [evidentiary] ruling, and has fallen well short of establishing that" admitting Paris's testimony "was legally or factually flawed to meet the demanding standard, under Rule 59(a), for a new trial." Freeman v. Giuliani, Civ. A. No. 21-3354 (BAH), 2024 WL 1616675, at *16 (D.D.C. Apr. 15, 2024). His motion for a new trial on this basis is thus denied.

### c. Omni's check tendered to Inova

Next, Omni argues it should have been permitted to present evidence and argument about the letter and check Omni tendered to Inova prior to Inova instigating this lawsuit. Def.'s Mot. at 23–26. In Omni's view, the letter did not constitute a settlement offer inadmissible under Federal Rule of Evidence 408 because it "tendered the check to Inova without any qualification or conditions." Id. at 23–24.

Once again, Omni is trying to use a motion for a new trial to relitigate an issue. The Court already decided that, regardless of their supposed "unconditional" nature, the letter and check were settlement offers covered by Rule 408 and thus excluded them pretrial. Draft Hr'g Tr. (July 19, 2024) at 17:2–19:20. So a motion for a new trial isn't the proper vehicle for this argument.

Putting that aside, the Court reaffirms its decision that the letter and check were inadmissible under Rule 408. In relevant part, Rule 408 makes inadmissible any "[e]vidence of . . . furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise the claim" as well as "statement[s] made during compromise

negotiations about the claim," if such evidence is admitted "to prove or disprove the . . . amount of a disputed claim."  Fed. R. Evid. 408(a).

In the disputed letter, Omni's counsel began by acknowledging Omni's receipt of Plaintiffs' "offer to resolve the dispute," but then "declin[ed] . . . [Inova's] counteroffer." Prelitigation Letter at 1.  The letter also states that Omni's "$42,479.52 offer . . . wholly compensates . . . [Inova] for any losses that resulted from the change in venue." Id.  It's hard not to see a letter "offer[ing]" $42,479.53 to Inova "to resolve this dispute," id., as consisting of "statement[s] made during compromise negotiations" and an "offer[] . . . [of] a valuable consideration in compromising or attempting to compromise the claim," Fed. R. Evid. 408(a). And Omni admits it sought to use the letter and check at trial to prove and/or disprove the amount of damages Inova sustained.  See Def.'s Mot. at 26 ("Had the jury been aware that Omni sent Inova the check for $42,479.52 before this lawsuit was filed . . . the jury may have found that Plaintiffs acted unreasonably by pursuing this litigation and declined to award any damages at all."); Fed. R. Evid. 408(a); Pierce v. F.R. Tripler & Co., 955 F.2d 820, 826–27 (2d Cir. 1992) ("Evidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim" and is "barred under . . . Rule 408."); Stockman v. Oakcrest Dental Ctr., 480 F.3d 791, 798 (6th Cir. 2007) (same).  Put simply, the letter and check fall squarely within Rule 408's prohibition. See also Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1106 (5th Cir. Unit B May 1981) (determining the test for whether something falls within Rule 408 is "whether the statements . . . were intended to be part of the negotiations toward compromise" (internal citation omitted)); Blu-J, Inc. v. Kemper C.P.A Grp., 916 F.2d 637, 642 (11th Cir. 1990) (applying the Ramada test to hold an independent evaluation was inadmissible under the rule because it was "intended to be

part of negotiations toward compromise," even though one party contended there "was no offer on the table").

Resisting that conclusion, Omni argues that the letter and check weren't settlement negotiations or offers covered by Rule 408 because "Omni tendered the check to Inova without any qualifications or conditions." Def.'s Mot. at 23–24. As a refresher, in addition to the above language, the letter also said that Plaintiffs could deposit the check "subject to . . . [a] full reservation of rights and without waiving any claims against Omni related to the change in venue." Prelitigation Letter at 1. In support of its argument, Omni points to three cases: one from this District, one from the District of New Jersey, and one from the Second Circuit. As the two district court cases rely on the Second Circuit case, discussion of the final case is sufficient to disclaim the authority of them all.

In Lightfoot v. Union Carbide Corporation, an employee sued her former employer under federal and New York state antidiscrimination laws for wrongful termination. 110 F.3d 898, 904 (2d Cir. 1997), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). After the district court granted the employer's motion for summary judgment, Lightfoot argued, inter alia, that summary judgment wasn't appropriate because there was a genuine issue of material fact as to whether she acted reasonably by declining her employer's prelitigation offer of reinstatement. Id. at 908. In addressing that issue, the court explained that "the Supreme Court [has] held that when an employer makes an unconditional offer to reinstate an employee terminated as a result of discrimination, the employee's rejection of that offer forecloses any claim for future front pay and tolls the continuing accrual of back-pay liability under Title VII of the Civil Rights Act of 1964." Id. (quoting Ford Motor Co. v. EEOC, 458 U.S. 219, 227 (1982)). Then the court determined the same was true under New York state law.

22

<u>Id.</u> But that led to Lightfoot's alternative argument—that the reinstatement letter wasn't even admissible under Rule 408. <u>Id.</u> at 909. In a single three-sentence paragraph, the court rejected that argument, concluding that since "an unconditional offer may not require the employee to abandon or modify his suit," the reinstatement letter "cannot be considered an offer of settlement or compromise." <u>Id.</u>

Despite its seemingly sweeping language, <u>Lightfoot</u> and its limited progeny have no bearing here. As an initial matter, <u>Lightfoot</u> addresses the particular circumstance of a wrongful termination statute interpreted consistently with Title VII. As the Second Circuit explained, unconditional offers of employment are relevant in Title VII cases because a denial of such an offer affects the remedies a plaintiff can recover . <u>See id.</u> at 908; <u>Jean-Baptiste v. District of Columbia</u>, 958 F. Supp. 2d 37, 44–45 (D.D.C. 2023). This takes unconditional offers in those cases outside of one of the rationales for Rule 408—that settlement offers are usually irrelevant. <u>See</u> Fed. R. Evid. 408 Advisory Committee's Note on 1972 Proposed Rules ("[E]xclusion [under Rule 408] may be based on two grounds. (1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position."). It's no wonder Omni points to no case applying such an "unconditional offer" rule outside the wrongful-termination context.

Moreover, the Second Circuit has since clarified that <u>Lightfoot</u> does not stand for the proposition that any possibly-unconditional reinstatement offer is admissible despite Rule 408. <u>Sheng v. M&TBank Corp.</u>, 848 F.3d 78, 85 (2d Cir. 2017). Instead, "where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408." <u>Id.</u> at 84–85 (quoting <u>Pierce</u>, 955 F.2d at 827). That presumption can only be

rebutted if "[t]he party seeking admission of [the] offer . . . demonstrate[s] convincingly that the offer was not an attempt to compromise the claim." <u>Id.</u> at 85 (alterations in original) (quoting <u>Pierce</u>, 955 F.2d at 827). The letter here shows that Omni and Inova were represented by counsel and that Inova had taken steps toward litigation. Prelitigation Letter at 1 ("[Y]our client could have avoided most, if not all, of the attorneys' fees it allegedly incurred in addressing this dispute and preparing its legal claims and complaint."). Yet Omni points to no evidence besides one sentence in an otherwise dispute-resolution-focused letter to argue the letter wasn't an attempt to compromise. That doesn't "demonstrate convincingly" the letter's admissibility. <u>Pierce</u>, 955 F.2d at 827.

Putting the Second Circuit's precedent aside, accepting Omni's request to conclude that this "unconditional offer" doesn't fall within Rule 408 would go against the second principle that underlies the rule: to foster and encourage settlements and compromises. Fed. R. Evid. 408 Fed. R. Evid. 408 Advisory Committee's Note on 1972 Proposed Rules; <u>see also</u> <u>United States v. Davis</u>, 596 F.3d 852, 860–61 & n.7 (D.C. Cir. 2010). Rather than encourage settlements, allowing parties to get out of Rule 408 by inserting language insisting an offer doesn't require "waiving any claims," Prelitigation Letter at 1, would only "chill[] such negotiations," <u>see</u> <u>Davis</u>, 596 F.3d at 861 n.7.

All in all, this Court continues to hold that the letter and check Omni sought to admit are inadmissible under Rule 408. Omni's motion for a new trial based on that issue is therefore denied.

### d. Jury instruction on loss of charitable contributions

Omni's penultimate argument is that this Court should grant a new trial because its instruction on loss of charitable donations was erroneous. Def.'s Mot. at 26–30. The instruction,

Omni says, was based on inapplicable case law and was redundant and confusing.  Id.  In full, the instruction in question read:

> As a nonprofit charitable organization, Inova may recover from Omni damages for loss of charitable donations and resulting frustration of its mission, if those damages are the natural consequence and proximate result of Omni's breach of contract, provided the damages are proved with requisite particularity.

Trial Tr. vol. 2 at 167:18–23.

Not to be repetitive, but Omni seeks yet again to use Rule 59(a) for another bite at the apple.  This Court already heard and responded to Omni's arguments that the instruction was legally inapplicable, confusing, and redundant.  Trial Tr. vol. 2 at 124:7–23.  The Court rejected Omni's argument that the instruction was based on inapplicable case law, then determined the original phrasing—which simply stated that Plaintiffs could recover "for loss of charitable donations and frustration of its mission" could be confusing because it made it seem as though there were two categories of damages rather than one.  Id. at 125:11–20.  So the Court added the word "resulting" before "frustration."  Id. at 125:24–125:7.

Regardless, "[e]ven if the Court considered [Omni's] argument anew, it would still find it unpersuasive."  Bitner, 2024 WL 4227152, at *7.  "Jury instructions are proper if, when viewed as a whole, they fairly present the applicable legal principles and standards."  Czekalski v. LaHood, 589 F.3d 449, 453–54 (D.C. Cir. 2009) (cleaned up).  They did so here.  Contrary to Omni's assertion, the legal principles reflected in the loss-of-charitable-deductions instruction are not inapplicable simply because the cases Plaintiffs cited to support the instruction involve claims under the Fair Housing Act.  See Def.'s Mot. at 26–28.  Under D.C. contract law, "the measure of damages is the amount necessary to place the non-breaching party in the same position he or she would have been in had the contract been performed."  Rowan Heating-Air Conditioning-Sheet Metal, Inc. v. Williams, 580 A.2d 583, 585 (D.C. 1990); Trial Tr. vol. 2 at

166:18–21 (jury instructions).  Accordingly, a defendant who breached a contract "is liable for such damages as are the natural consequence and proximate result of his conduct."  Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 736–37 (D.C. 2000) (internal quotation marks omitted); see also Bacmo Assocs. v. Strange, 388 A.2d 487, 489 (D.C. 1978). So, for example, a plaintiff can recover the cost of accommodations and storage if the seller of a home breaches the contract by not giving the buyer possession on the date specified in the contract, see Bacmo Assocs., 388 A.2d at 489, and a coffeeshop owner can recover lost profits that resulted from the breach of a contract for the installation of an air conditioner, see Sears, Roebuck & Co. v. Goudie, 290 A.2d 826, 832–33 (D.C. 1972).  Applying those principles here, it's clear that Plaintiffs could recover for the loss of charitable donations that were the natural and proximate result of Omni's breach—just as the challenged instruction said.  Trial Tr. vol. 2 at 167:18–23.[9]

So the loss-of-charitable-contributions instruction "fairly present[ed] the applicable legal principles and standards."  Czekalski, 589 F.3d at 453.  Even so, Omni maintains that the instruction was redundant and confusing because the Court also instructed the jury that "[t]he measure of damages for a breach of contract is that amount of money necessary to place the injured party in the same economic position it would have been in if the contract had not been breached."  Def.'s Mot. at 29 (quoting Trial Tr. vol. 2 at 166:10–167:4).  Yet if the "instruction was erroneous only because it was redundant, then the error cannot be prejudicial."  See Sibert-Dean v. Wash. Metro. Area Transit Auth., 721 F.3d 699, 705 (D.C. Cir. 2013); In re Lorazepam & Clorazepate Antitrust Litig., 467 F. Supp. 2d 74, 89 (D.D.C. 2006) ("The standard for

---

[9] Plaintiffs' reliance on Fair Housing Act cases wasn't erroneous.  Under the Fair Housing Act, a plaintiff can recover for injuries proximately caused by the defendant's violation of the act.  See Bank of Am. Corp. v. City of Mia., 581 U.S. 189, 201–03 (2017).  So the fact that Fair Housing Act plaintiffs have been permitted to recover for loss of charitable donations indicates the nonbreaching party in a contract case could, too.

determining whether an erroneous jury instruction mandates a new trial is the general harmless error standard."). Omni provides no argument as to why the instruction was confusing apart from the fact that the jury did not award the amount of damages Plaintiffs' expert calculated. See Def.'s Mot. at 29–30. But as explained below, that is the jury's prerogative, and the damages award for loss of distributions was not so high or low as to warrant either an assumption of confusion or a new trial. Also, given the instruction's legal accuracy and consistency with the greater damages instructions, the Court fails to see how a reasonable jury could have been confused as a result of the challenged instruction.

The challenged instruction, like the jury instructions viewed as a whole, was legally sound. So Omni's motion for a new trial fails on this ground, too.

### e. Clear weight of the evidence

Omni's fifth and final argument that this Court should grant a new trial is that the jury's verdict was against the clear weight of the evidence presented at trial. Def.'s Mot. at 30–34. Interestingly, Omni does not argue that the award, on the whole, was excessive. Rather, it argues that the amounts the jury awarded Plaintiffs—$37,154.27 for additional costs, $127,001.65 for Inova's loss of distributions, and $60,844.35 for Smith Center's loss of distributions—were in error because they did not track Paris's estimated damages—$15,892 for additional costs, either $297,968 or $250,552 for Inova's loss of distributions, and either $126,760 or $111,890 for Smith Center's loss of distributions. See id.; Jury Verdict at 1. Because Paris was the only witness to testify to estimated damages, Omni says, the jury's verdict was against the clear weight of the evidence and a new trial should be granted. Def.'s Mot. at 30–34.

"When considering a sufficiency of the evidence challenge to a jury's damages award," a court's "inquiry ends once" it is "satisfied that the award is within a reasonable range and that

the jury did not engage in speculation or other improper activity." <u>Miller v. Bill Harbert Int'l Constr., Inc.</u>, 608 F.3d 871, 905 (D.C. Cir. 2010) (internal quotation marks omitted). Moreover, in determining whether the award was reasonable, a court "need not—and indeed cannot—reconstruct the precise mathematical formula that the jury adopted. Nor need [it] explore every possible quantitative analysis or compute the basis of each penny and dollar in the award." <u>Carter v. Duncan-Huggins, Ltd.</u>, 727 F.2d 1225, 1239 (D.C. Cir. 1984). "[D]amage[s] must, however, be proven and cannot be presumed." <u>Nyman v. FDIC</u>, 967 F. Supp. 1562, 1571 (D.D.C. 1997) (citing <u>Carey v. Piphus</u>, 435 U.S. 247, 263–64 (1978)).

Here, the jury's award was reasonable—for the most part. Begin with the award of loss of distributions. According to Omni, the jury's award would have been supported by sufficient evidence only if the jury had awarded the precise dollar amount of donations Paris had estimated Plaintiffs lost as a result of Omni's breach. <u>See</u> Def.'s Mot. at 31–32 (arguing that, because none of the damages awards matched Paris's estimations, the awards "are all contrary to the evidence presented at trial, and they suggest that the jury misconceived or misunderstood the facts or the law presented to them"). There are two main errors with this argument. First, Paris's testimony wasn't the only evidence that the jury heard. Yes, it was the only expert testimony and the only testimony that included dollar figure estimates of damages. The jury, however, was not limited to considering expert testimony or numerical estimates. It also was permitted to rely on other evidence—including testimony about the impact of the breach by Hisaoka, Trial Tr. vol. 1 at 88–152, one of RGH's lawyers, <u>id.</u> at 152–204, Inova's president and chief philanthropy officer, <u>id.</u> at 204–18, Inova's executive director, Trial Tr. vol. 2 at 4–19, and the Gala's escrow agent, <u>id.</u> at 19–41.

That brings the Court to the second issue with Omni's argument: the jury was permitted—indeed was required—to make "[c]redibility determinations, [] weigh[] . . . the evidence, and [] draw[] . . . legitimate inferences from the facts." Martinez v. District of Columbia, 503 F. Supp. 2d 353, 357 (D.D.C. 2007) (first alteration in original) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000)). That it did not fully credit Paris's testimony and award the numbers he presented does not mean that its verdict was "contrary to the evidence" or a product of "mere speculation or guesswork." But see Def.'s Mot. at 33–34 (quoting Xereas v. Heiss, Civ. A. No. 12-456 (DAR), 2019 U.S. Dist. LEXIS 130282, at *15 (D.D.C. Aug. 5, 2019)). "The question before the Court is not whether the Court would weigh the evidence differently." Allen v. Yellen, Civ. A. No. 18-1214 (RC), 2023 WL 3933723, at *2 (D.D.C. June 9, 2023). Rather, "the jury's verdict must stand unless 'the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached [the] verdict . . . .'" Id. (quoting Bill Harbert Int'l Constr., 608 F.3d at 899).

The Court cannot say that the jury's awards for loss of distributions were awards that no reasonable men and women could have made. Both awards were below the amount Paris estimated, so they cannot be said to be excessively high, and Omni points to nothing that indicates they were excessively low either. And while the Court cannot determine the precise method the jury used to arrive at its awards, it can presume the jury followed its instruction that it could "not award Inova damages for . . . harm which is speculative or remote or which is based on guesswork or conjecture." Trial Tr. vol. 2 at 167:5–10; see Bill Harbert Int'l Constr., 608 F.3d at 906–07 ("The district court was entitled to presume that the jurors followed the instructions they were given." (cleaned up)); Duncan-Huggins, 727 F.2d at 1239 (explaining a

court "need not—and indeed cannot—reconstruct the precise mathematical formula that the jury" used so long as the court is "satisfied that the award is within a reasonable range and the jury did not engage in speculation or other improper activity").

Now for the jury's award of increased costs. Here, Omni argues that there was no evidentiary basis to award $37,154.27, which is "almost 2.5 times th[e] amount" of increased costs Paris estimated. Def.'s Mot. at 32–33. The additional award amount, Omni says, may have been the result of the jury believing it could award the attorneys fees that were listed in an exhibit. Id. at 33. If so, the jury's award would be improper. Plaintiffs originally sought legal fees as part of their damages, but they did not object when Omni moved to strike that claim at the close of evidence. Trial Tr. vol. 2 at 104:1–106:11. So the jury was not permitted to award attorney's fees. See id. at 169:10–13.

Plaintiffs, for their part, don't counter Omni's argument. In fact, they affirmatively state that "[t]he jury did award . . . $21,898.27 beyond the $15,256 calculated by Mr. Paris," which represents an amount "not supported by the evidence." Pls.' Opp'n at 33–34. But instead of granting Omni's request to order a new trial, Plaintiffs ask this Court to fix the jury's error by reducing the amount of damages for increased costs by $21,898.27. Id.

As Plaintiffs rightly argue, "[r]egardless of the way a party characterizes a motion, a post-judgment filing challenging the correctness of the judgment falls within the perimeter of Rule 59(e)." Nyman, 967 F. Supp. at 1569. That rule permits a party to move "to alter or amend a judgment," Fed. R. Civ. P. 59(e), to, among other things, "correct a clear error." Pigford v. Perdue, 950 F.3d 886, 891 (D.C. Cir. 2020) (quoting Ciralsky v. CIA, 355 F.3d 661, 671 (D.C. Cir. 2004)). Since Plaintiffs consent to the reduction, this Court will order the jury's award of damages for increased costs decreased by $21,898.27. See Carter v. District of Columbia, 795

F.2d 116, 135 (D.C. Cir. 1986) ("The judge may reduce the damage award if the verdict winner consents to the reduction, or the judge may order a new trial on his own initiative." (emphasis added)); Yost v. Sauter, 420 F.2d 79, 81 n.2 (D.C. Cir. 1969) (per curiam) ("Technically, of course, the District Court could not order a remittitur, but it could condition the denial of a new trial on plaintiff's consent to a remittitur." (emphasis added)); Federal Practice § 2815 (explaining that remittitur is "a practice . . . sanctioned by long usage" that gives "the plaintiff . . . . the option of either submitting to a new trial or of accepting the amount of damages that the court considers justified").  The award for increased costs will thus be amended to $15,256.[10]

*         *         *

In the end, Omni doesn't meet the "rigorous standard" required to show it's entitled to a new trial on any of its five bases.  See Warren, 224 F.R.D. at 239.  Instead, Omni primarily seeks to use "Rule 59 . . . [as] a vehicle for relitigating old issues."  Moore, 102 F. Supp. 3d at 65.  But that is not the rule's function.  Id.  As a result, Omni's motion for a new trial is denied, and the jury's damages award shall be altered only as stated above.

## III.    Prejudgment and Postjudgment Interest

Setting Omni's motion aside, the Court now addresses Plaintiffs' motion for prejudgment and postjudgment interest.  The Court denies the motion as to the former and grants it as to the latter.

### a.  Prejudgment interest

Prejudgment interest accumulates "from the time the claim accrues until judgment is entered."  West Virginia v. United States, 479 U.S. 305, 310–11 & n.2 (1987).  Because it "is a substantive matter," the award of prejudgment interest is "based on the law of the jurisdiction

---

[10] Because Plaintiffs ask the Court to decrease the award for increased costs, the Court does not opine on whether the record reflects the jury actually erred in its award.

creating the underlying cause of action—here, District of Columbia law." Winder v. District of Columbia, 555 F. Supp. 2d 103, 111 n.4 (D.D.C. 2008).

For contract actions, D.C. law provides for prejudgment interest via statute. What is available depends on the type of damages awarded. For liquidated damages—or those "which 'at the time [the claim] arose, . . . w[ere] an easily ascertainable sum certain," District of Columbia v. Pierce Assocs., Inc., 527 A.2d 306, 311 (D.C. 1987)—D.C. Code § 15-108 (2024) provides "the judgment for the plaintiff shall include" prejudgment interest. But for unliquidated damages—which both parties acknowledge we have here—section 15-109 governs. That section provides in relevant part:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.

§ 15-109 (emphases added). Put differently, the general rule in breach of contract claims involving unliquidated damages is that "interest on damages . . . runs only from the date of judgment, and that prejudgment interest is therefore usually unavailable." Pierce Assocs., 527 A.2d at 310. Only if "the jury, or the court, if the trial be by the court" decides prejudgment interest is "necessary to fully compensate the plaintiff," may that interest be "include[d] . . . as an element in the damages awarded." § 15-109; see Fed. Mktg. Co. v. Va. Impression Prods. Co., 823 A.2d 513, 532 (D.C. 2003).

Here, the trial on damages was by jury. But the jury did not award Plaintiffs prejudgment interest. In fact, Plaintiffs "did not request" that the jury decide whether to award prejudgment interest, and they didn't object "to the final verdict form's," nor "to the jury instructions[']," "silence as to pre-judgment interest." See Fudali v. Pivotal Corp., 623 F. Supp. 2d 11, 18–19

(D.D.C. 2008); Pls.' Proposed Jury Instrs. at 7–10; Trial Tr. vol. 2 at 112:10–128:20.  And since "the jury did not 'includ[e] interest as an element in the damages awarded,'" "it will not be awarded now," <u>Fudali</u>, 623 F. Supp. 2d at 19  (alteration in original) (quoting D.C. Code § 15-109).

Plaintiffs contend that their request for interest doesn't depend on D.C. Code § 15-109. They point out that "the obligation to pay prejudgment interest arises under the common law and may be payable even in the absence of a statutory authorization to that effect."  Pls.' Reply to Def.'s Opp'n to Pls.' Mot. [ECF 132] ("Pls.' Reply) at 2 (quoting <u>Burke v. Groover, Christie & Merritt, P.C.</u>, 26 A.3d 292, 306 (D.C. 2011)).  And "[w]hether to award prejudgment interest in such circumstances is a determination that lies in the equitable discretion of the trial court."  <u>Id.</u> at 3.  So, say Plaintiffs, it doesn't matter that the jury didn't award them prejudgment interest; the Court should award it because the balance of equities tip in Plaintiffs' favor.  <u>Id.</u> at 5–7.

To their credit, Plaintiffs provide several quotes to back up their argument.  D.C. courts have said that prejudgment interest can be awarded absent statutory authority.  <u>See, e.g.</u>, <u>Riggs Nat'l Bank of Wash., D.C. v. District of Columbia</u>, 581 A.2d 1229, 1254 (D.C. 1990) ("[N]o explicit statutory authorization is required for an award of pre-judgment interest.").  Even more frequently, they have said courts have broad discretion to award such interest.  <u>See, e.g.</u>, <u>House of Wines, Inc. v. Sumter</u>, 510 A.2d 492, 498 (D.C. 1986) ("The trial court has broad discretion in awarding prejudgment interest."); <u>Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea</u>, 962 F. Supp. 2d 152, 164 (D.D.C. 2013) ("A trial court has wide discretion in awarding prejudgment interest."); <u>CapitalKeys, LLC v. Democratic Republic of Congo</u>, 278 F. Supp. 3d 265, 291 (D.D.C. 2017) (Under D.C. law, "district courts have wide discretion in terms of

awarding prejudgment interest."); <u>Fed. Mktg. Co.</u>, 823 A.2d at 531 ("[T]he court has ample discretion to include prejudgment interest" in damages.").

But <u>quotes</u> from cases only get one so far.  Upon review of the cases themselves, it becomes clear these statements are only made either (1) when the court is the finder of fact; or (2) when the given claim isn't for breach of contract (<u>i.e.</u>, when D.C. Code §§ 15-108 and 15-109 don't apply).[11]  For example, in <u>Burke</u>, the court explained that prejudgment interest could be awarded in <u>a tort action</u> even though no D.C. statute says as much.  26 A.3d at 305–06; <u>see also</u> <u>Duggan v. Keto</u>, 554 A.2d 1126, 1140 (D.C. 1989); <u>Riggs Nat'l Bank</u>, 581 A.2d at 1256 (determining prejudgment interest could be awarded for claims under the Unclaimed Property Act); <u>Neal v. Dir., D.C. Dep't of Corrections</u>, Civ. A. No. 93-2420 (RCL), 1995 WL 870887, at *3 (D.D.C. Dec. 20, 1995) (awarding prejudgment interest post-jury trial on Title VII and Civil Rights Act claims).  And in <u>Lanny J. Davis & Assocs.</u>, the court served as factfinder.  <u>See</u> 962 F. Supp. 2d at 156, 164; <u>see also</u> <u>CapitalKeys</u>, 278 F. Supp. 3d at 269–70, 291 (same); <u>Fed. Mktg. Co.</u>, 823 A.2d at 531 (same).

Plaintiffs do not point to a single breach of contract case in which a judge awarded prejudgment interest after a jury decided the issue of damages.  Nor could they.  D.C. courts and courts in this Circuit interpreting D.C. law have consistently held that prejudgment interest is an issue for the factfinder, so a court cannot award it if trial was by jury.  <u>See, e.g.</u>, <u>Fudali</u>, 623 F. Supp. 2d at 18–19; <u>Schwartz v. Swartz</u>, 723 A.2d 841, 844 (D.C. 1998); <u>Rosenthal v. Sonnenschein Nath & Rosenthal, LLP</u>, 985 A.2d 443, 455 n.9 (D.C. 2009) ("The judge rightly concluded, however, that D.C. Code § 15–109 (2001) barred the request because Rosenthal had not presented any claim for prejudgment interest to the trier of fact."); <u>Emersons, Ltd. v. Max</u>

---

[11] Unlike the cases that follow, <u>House of Wines</u> made its statement while affirming the trial court's decision to allow <u>the jury</u> to decide whether to award prejudgment interest.  510 A.2d at 498–99.

Wolman Co., 388 F. Supp. 729, 736 (D.D.C. 1975) (similar); Pierce Assocs., 527 A.2d at 310 (explaining that D.C. Code § 15-109 permits "the factfinder" to award prejudgment interest); Dist. Cablevision Ltd. v. Bassin, 828 A.2d 714, 731–32 (D.C. 2003) (acting as factfinder and denying request for prejudgment interest under § 15–108); Klayman, 2019 WL 1244079, at *26 (determining plaintiff's request for prejudgment interest on liquidated damages did not need to be decided by the jury, but plaintiff's request for prejudgment interest on unliquidated damages did). The same is even true of the case Plaintiffs repeatedly emphasize—Seo v. Oh, Civ. A. No. 18-785 (RDM), 2023 WL 3119779 (D.D.C. Apr. 27, 2023). See Pls.' Reply at 3–4. There, D.C. Code § 15-109 didn't apply; even so, the court made plain that, "[b]ecause [it was] . . . not a case in which 'the trial [was] by the court,' even if §15-109 otherwise applied, Plaintiffs' recourse was to ask the jury to return an answer of pre-judgment interest, which they failed to do." Seo, 2023 WL 3119779, at *4 (final alteration in original).

Plaintiffs "could have introduced at trial, for the jury's consideration, evidence to show that prejudgment interest was necessary to fully compensate" them. Schwartz, 723 A.2d at 844. But they chose instead to "present[] the issue . . . in a post-trial motion." Id. Hence, the Court denies Plaintiff's motion as to prejudgment interest. See id.

### b. Postjudgment Interest

In contrast to prejudgment interest, "[p]ost-judgment interest is governed by federal law, even in a case in which a federal court hears only state-law claims." Lanny J. Davis & Assocs., 962 F. Supp. 2d at 165. The governing statute is 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Said another way, "[a]warding post-judgment interest under Section 1961(a) is mandatory, not discretionary." Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Hotelco, C.A., 342 F. Supp. 3d

1, 25 (D.D.C. 2018) (internal quotation marks omitted).  So the Court will award Plaintiffs postjudgment interest at the rate § 1961 provides.  <u>See</u> § 1961(a) ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . .").

## IV.    Bill of Costs

Lastly, the Court addresses Plaintiffs' bill of costs.[12]

Federal Rule of Civil Procedure 54(d)(1) says that, as a general rule, "costs—other than attorney's fees—should be allowed to the prevailing party."  In this District, Local Civil Rule 54.1(d) then lays out what kinds of costs the clerk may tax including, but not limited to, "[c]osts of service of summons and complaint," "[c]osts . . . of any deposition . . . if the deposition was used on the record, at a hearing or trial," "[c]osts of copying those exhibits which are introduced into evidence . . . or are filed with the Clerk," and "[o]ther costs of copying up to $300.00."  <u>See also</u> 28 U.S.C. § 1920 (permitting federal judges and clerks of court to tax similar costs).  The Court starts from a "'very powerful'" presumption "that a prevailing party is entitled to costs as a matter of course."  <u>Long v. Howard Univ.</u>, 561 F. Supp. 2d 85, 96 (D.D.C. 2008) (quoting <u>Baez v. U.S. Dep't of Just.</u>, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per curiam)).  "Unsuccessful parties bear the burden of showing circumstances sufficient to overcome the presumption in favor of awarding costs to the prevailing party."  <u>Id.</u>

Plaintiffs here ask for a total of $20,919.39 of costs to be taxed.  Bill of Costs at 1.  Omni objects to some of the costs in three categories: costs for service of subpoenas, costs for deposition transcripts, and copying costs.  <u>See generally</u> Def.'s Obj. to Costs.  Notably, Plaintiffs

---

[12] Omni not only objected to Plaintiffs' bill of costs, but also moved to stay consideration of it until after the resolution of Omni's forthcoming appeal.  Def.'s Obj. to Costs at 1–2.  Yet Local Civil Rule 54.1(c) already provides that costs won't be taxed until "the court of appeals issues its mandate."  <u>See</u> <u>Long v. Howard Univ.</u>, 561 F. Supp. 2d 85, 96 (D.D.C. 2008).  And even if Plaintiffs file a supplemental bill of costs following that mandate, "the Court concludes that determining the amount of taxable costs presently is nonetheless the most prudent course."  <u>Id.</u>

did not respond to any of Omni's objections, so the Court takes Omni's word for facts not otherwise apparent from the bill of costs itself.

### a. Service costs

Omni only objects to the cost of serving a subpoena on Antonella Haring.[13]  Def.'s Obj. to Costs at 2; Bill of Costs at 12.  Omni states that the cost isn't taxable under Local Civil Rule 54.1(d) because Haring didn't testify at trial.  Def.'s Obj. to Costs at 2; see LCvR 54.1(d)(11) ("Costs of service of a subpoena on a witness who testified at a deposition, hearing or trial.") (emphasis added).  "Although neither the Local Rules nor the United States Code mandates that the subpoenaed witnesses specifically testify at trial in order to justify reimbursement, when the subpoena is issued specifically for trial and the witness does not testify, the Court is within its authority to deny such recovery."  Medina v. District of Columbia, 864 F. Supp. 2d 13, 23 (D.D.C. 2012) (emphases and footnote omitted).  The Court will exercise that authority and deny Plaintiffs the cost here.

### b. Costs of deposition transcripts

Omni's first objection to Plaintiffs' deposition costs is to an invoice that does not specify the deponent.  Def.'s Obj. to Costs at 2; Bill of Costs at 14.  Because the Court cannot determine whether the costs fall within either Local Civil Rule 54.1(d) or 28 U.S.C. § 1920, the Court will deny those costs.  See LCvR 54.1(d)(6) ("Costs . . . of the original and one copy of any deposition noticed by the prevailing party, and of one copy of any deposition noticed by any other party, if the deposition was used on the record, at a hearing or trial); 18 U.S.C. § 1920(2) ("Fees for printed or electronically recorded transcripts necessarily obtained for use in the case.").

---

[13] The record is unclear as to whether the subpoena for Haring was a trial subpoena or a deposition subpoena (and if it were the latter, whether Haring was ever deposed).  Since Inova did not respond to Omni's objection to the cost, the Court assumes the subpoena was a trial subpoena.

Next, Omni objects to certain fees listed on fifteen other deposition invoices Plaintiffs submitted.  Def.'s Obj. to Costs at 3–7; Bill of Costs at 15–30.  Omni contends that certain fees, such as those for administration, reporter appearances, shipping and handling, and remote depositions, are not recoverable.  E.g., Def.'s Obj. to Costs at 3 (citing OAO Alfa Bank v. Ctr. for Pub. Integrity, Civ. A. No. 00-2208 (JDB), 2006 WL 1313309, at *4 (D.D.C. May 12, 2016)).  It also objects to expedition fees because Local Civil Rule 54.1(d)(6) provides deposition transcripts may be taxed "at the reporter's standard rate."

The Court agrees with Omni.  In this district, a prevailing party cannot recover costs incurred "for the convenience of counsel" or for "cost[s] of operating a law firm."  OAO Alfa Bank, 2006 WL 1313309, at *4.  The former category includes "minuscript, ASCII copies, indices, and diskettes," id., so Plaintiffs' fees for remote depositions, condensed transcripts, and litigation technology will not be taxed.  The latter category includes "costs associated with delivery, shipping, and handling," id., so those costs won't be awarded either.  And because Plaintiffs don't respond to Omni's objections, this Court won't tax the administration or expedited transcript fees: plaintiffs do not explain what the administration fee is, so the Court assumes it falls into one of the categories of unrecoverable costs, and Plaintiffs do not explain whether expedited transcripts were "necessarily obtained for use in the case," 28 U.S.C. § 1920(2), so the Court will assume those fees were unnecessary to the case.  Robertson v. McCloskey, 121 F.R.D. 131, 133 (D.D.C. 1988) (placing burden for showing transcripts were necessarily obtained on party seeking costs); see also Lynch v. Wal-Mart Assocs., Inc., Civ. A. No. 20-934 (BAH), 2024 WL 491230, at *8 (D.D.C. Feb. 8, 2024) (determining prevailing defendant's proposed costs should be taxed because the defendant "persuasively counter[ed]

each of [the] plaintiff's objections to the itemized costs" by explaining why the costs were necessary to the case).

### c. Copying costs

Finally, Omni objects to Plaintiffs' $4,465.20 of copying costs. Def.'s Obj. to Costs at 7–8. As Omni sees it, the costs are not taxable because the "entries do not identify what documents were copied, or why." Id. at 7; see also Bill of Costs at 31–32. As a result, Plaintiffs have failed to show that the copying costs were for "exhibits which [we]re introduced into evidence, [we]re used for impeachment, or [we]re filed with the Clerk." LCvR 54.1(d)(8); see also 28 U.S.C. § 1920 (only copying costs "necessarily obtained for use in the case" may be taxed). So the Court assumes the costs were "[o]ther costs of copying," and thus only $300 of Plaintiffs' requested copying costs will be taxed. See LCvR 54.1(d)(9).

*           *           *

In accordance with the above, Plaintiffs' costs will be taxed at the amount listed in Plaintiffs' bill of costs, minus the sums the Court has determined are not taxable. The order accompanying this opinion will specify the final amounts to be taxed.

## CONCLUSION

After a grant of summary judgment and a trial on damages, this Court resolves the outstanding postjudgment motions and filings in this case. It denies Omni's motion to dismiss and its motion for a new trial but orders the jury's verdict for additional costs reduced by $21,898.17. The Court also denies Plaintiffs' motion for prejudgment interest but grants the motion as to postjudgment interest. Finally, the court grants in part and denies in part Plaintiffs'

requests in their bill of costs.  A separate order consistent with this opinion has been issued on this date.[14]


_____/s/_____
JOHN D. BATES
United States District Judge

Dated: <u>December 18, 2024</u>

---

[14] As this case concludes, the Court pauses to wonder what, if anything, the parties' counsel have accomplished for their clients here.  This dispute has been in federal court for nearly five years.  There has been extensive motion practice, a multi-day trial on damages, and post-trial motions, and an appeal is likely imminent.  While the Court is not privy to the payment structure or costs associated with the case, the Court struggles to believe the costs the parties have incurred are justified by the benefits they received.  One would surmise that the total for five years of legal fees exceeds the $203,102.10 Plaintiffs will recover from Omni.  And Omni, it appears, is out of far more money now than it would have been if it settled the case early or the damages issue prior to trial.  There is no doubt a compensable wrong occurred here, and Omni had every right to defend itself.  But this case is a reminder that a client's best interest is not always served by uncompromising litigation.